ELIHU CHAUNCEY, trustee, *vs.* BLANCHE L. SALISBURY & others.

Suffolk.    March 17, 1902. — May 23, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, HAMMOND, & LORING, JJ.

*Devise and Legacy*, Construction.

A testatrix began her will by declaring her intention of disposing of her whole property. She then created a life estate in her whole property, divided the remainder into two equal parts, and fully provided for the final disposition of the first part. She then provided, that the other half should be equally divided among six nephews and nieces named, and added " the sum I bequeath to William Salisbury and the sum I bequeath to Sam Salisbury I wish put in trust to Elihu Chauncey and they should have the income only." The persons thus named were two of the six. *Held*, that the bequest to " Sam Salisbury " was an absolute gift, subject to the provision that he should be entitled only to the income during his life, and that upon his death the fund went to the administrator of his estate.

BILL FOR INSTRUCTIONS, filed December 3, 1901, by the trustee under the will of Sarah Austin.

This case came on to be heard before *Morton*, J., who, with the consent of the parties, reserved it upon the bill and answers, and a copy of the will of Sarah Austin, for the consideration of the full court; such decree to be entered as equity and justice might require.

The will was as follows:

" I Sarah Austin of Boston in the County of Suffolk State of Massachusetts Widow being of sound and disposing mind and memory and desirous of ,disposing of my worldly estate while I have strength I do publish & declare this my last will & testament hereby making void all other wills & testaments heretofore made by me.

" I hereby bequeath and dispose all my estate real and personal of which I shall be entitled at the time of my decease the manner following to wit.

" I hereby constitute & appoint my nephew Elihu Chauncey sole executor of my last will and testament and request and direct that he shall not be required to give bonds as said executor and I authorize my said executor to sell any portion of my real estate in public or private sale and I direct my said Executor to pay all my just debts & funeral expenses as soon as may be done after my decease also the legacies hereafter named and I further ask my said executor to erect at Mt Auburn a monument for me like the one raised to Mrs Denny in Uncle Tappans lot — An Angel pointing toward Heaven.

" I give & bequeath to my brother Waldo Salisbury and my sister Rebecca Salisbury all my property real and personal. My share in the Summer Street estate also Central Court my share in Temple Place estate Haverhill Street and any other real estate of which I shall die possessed during their natural lives the income of all to be used by them.

" After my decease I give to my nephew Charles Chauncey my shares in the Nashua Factory also Amoskeag and any other shares in Factories held in trust by my brother Waldo Salisbury.

" After the death of my brother Waldo Salisbury & my sister Rebecca Salisbury I give and bequeath half my property of which I shall die possessed to my nephew Charles Chauncey during his life. If he die without heirs I give the half of my property to Elihu Chauncey during his life. If neither of them have heirs at their decease I give it to be divided among my nieces & nephews children of my brother Stephen Salisbury. If Charles or Elihu Chauncey have children the property is to go to them.

" I give & bequeath to Sarah Ann Tasker of Reading the sum of one hundred dollars.

" Having given the half of my property at the decease of my brother Waldo & sister Rebecca to Charles Chauncey   The remaining half I wish divided among my nephew and nieces the children of my brothers Stephen and my eldest brother Sam. They consist of Annie Woolsey William Salisbury Elizabeth Fitz-Gerald Sally Walker Agnes Chauncey Salisbury children of my brother Stephen also Sam Salisbury at the West son of my brother Sam to be divided equally among them.

" The sum I bequeath to William Salisbury and the sum I bequeath to Sam Salisbury I wish put in trust to Elihu Chauncey & they should have the income only.

" I desire that the last survivor of the two sons of my sister Elizabeth being at the time of his death without issue shall have full power to dispose of all the property coming to him through this will by his last will and testament in writing or the nature of a last will to any one or more of the issue of my brother Stephen.

" I give to Carrie FitzGerald Stephen FitzGerald Robert Walker & Salisbury Woolsey one hundred dollars."

There were two codicils containing certain small bequests in no way material to this case.

*R. B. Stone,* for Blanche L. Salisbury, and Joseph G. Francis, administrator.

*H. G. Allen & H. W. Conant,* for William C. G. Salisbury.

*E. N. Jones,* for Charles Chauncey and others.

*J. J. Higgins,* guardian *ad litem* for certain minors.

HAMMOND, J.   This case calls for the determination of the nature of the bequest to Samuel Salisbury under the following clause of his aunt Sarah's will : " Having given the half of my property at the decease of my brother Waldo & sister Rebecca to Charles Chauncey   The remaining half I wish divided among my nephew and nieces the children of my brothers Stephen and my eldest brother Sam.   They consist of Annie Woolsey William Salisbury Elizabeth FitzGerald Sally Walker Agnes Chauncey Salisbury children of my brother Stephen also Sam Salisbury at the West son of my brother Sam to be divided equally among them.   The sum I bequeath to William Salisbury and the sum I bequeath to Sam Salisbury I wish put in trust to Elihu Chauncey & they should have the income only."

As in the case of *Chauncey* v. *Francis, ante,* 513, which was argued in connection with this case, we are called upon to interpret a will without any other light as to the circumstances under which it was written than that which can be derived from an inspection of it.

The will is inartificially drawn in some respects, but keeping closely to the cardinal principle of interpretation that after all the real purpose is to get at the intention of the testator, there is not any great difficulty in coming to a decided conviction as to the meaning of the clause in question.

It is instructive to examine the general scope and framework of the whole will. After the usual introductory words the testatrix announces her intention in the following clear language: " I hereby bequeath and dispose all my estate real and personal of which I shall be entitled at the time of my decease the manner following to wit." With that intention she proceeds. She first appoints an executor, granting him certain powers as to the sale of her estate and giving him directions as to a monument to be erected to her memory. Then she gives all her property to her brother Waldo and sister Rebecca for life. Certain stocks held in trust by Waldo, apparently not regarded by her as a part of her estate but of which it may fairly be inferred she had a power of disposition by will, she gives to a nephew. She then proceeds to the consideration of what disposition shall be made of her estate after the death of Waldo and Rebecca. She divides it into two equal parts. The first half she gives to her nephew Charles Chauncey during his life, and if he dies " without heirs," then to Elihu Chauncey, another nephew, for life. If neither of them has " heirs " at his decease, then she directs that it be divided among the nieces and nephews who may be children of her brother Stephen, and finally ends as to this half in the following language: " If Charles or Elihu Chauncey have children the property is to go to them." So far the will is easily read. In sentences somewhat elliptical but clear and direct, the testatrix has created a life estate in her whole property, has divided the remainder after the life estate into two equal parts and has fully provided for the final disposition of the first part. So far she has proceeded in accordance with her intention announced when she began.

The second part remains, and she directs her mind to that. She concludes to divide it among her nephew and nieces, " children of my brothers Stephen and my eldest brother Sam." She specifically names each one of them, and directs that the property " be divided equally among them." There are six of them, five being children of Stephen, and one, Samuel, the child of her " brother Sam." Then follows the sentence over which this controversy arises : " The sum I bequeath to William Salisbury and the sum I bequeath to Sam Salisbury I wish put in trust to Elihu Chauncey & they should have the income only." And there, with the exception of two small specific bequests, and certain further directions in relation to the first half which need not be recited, she stops.

We have before us, therefore, the will of a person who started out with the purpose formally declared of disposing of the whole estate, and who proceeded with considerable minuteness of detail to create life estates and trust estates. As to the first half of her property she did make final disposition.

The clause in question is to be interpreted under this light. She wishes this second half to be equally divided among the six persons named. Each therefore takes one sixth. The part bequeathed to Samuel is put in trust, and he " should have the income only." It is contended by some of the parties to this suit that by this direction the interest bequeathed to Samuel was cut down to an equitable life estate. If this is so, then the remainder in his sixth, after the life estate, goes to the children of Stephen, excluding William, or it passes to the heirs at law of the testatrix as intestate property. In order to accept the first alternative, we must conclude that the testatrix meant to give to the four children of her brother Stephen not only four sixths absolutely, but also the remainder after the life estate in the other two sixths (the shares bequeathed to William and Samuel). It does not seem to us reasonable that if the testatrix had had in mind any such result as that she would have described the division between the six as equal. Moreover there would appear to be no reason why she should not have been as clear and specific as to the creation of remainders in this half as in the first half, if she intended to create them. Nor is the second alternative any more acceptable. It is not reasonable to

suppose that she thought she had not disposed of her whole property. She started out to dispose of the whole, and as to the first half certainly great pains are taken in that direction.

In view of the declared purpose of the testatrix to dispose of her whole property, the general framework of the will showing the manner in which she proceeded to the execution of her purpose, the clear and direct language with which she created remainders, first in her whole estate and afterwards, when it was divided into two parts, in the first of those parts, the provision that the other part should be divided equally between six persons of whom Samuel was one, the entire absence of any specific allusion to any remainder in his part or any specific disposition of any such remainder to any other person, there would seem to be every reason to believe that the testatrix intended that Samuel should take one sixth equally with the others, but that he " should have the income only," during his life, and that at his death the trust should cease and the property, then being a part of his estate, should be distributed as such. See *Fay* v. *Phipps*, 10 Met. 341. Of course such an estate both as to income and principal could be reached by creditors, and this the testatrix must be presumed to have known. As thus interpreted, there is nothing in the will with respect to Samuel's share which is inconsistent with the principles of law.

It follows that the one sixth which was held for Samuel belongs now to his estate. There should be a decree that the personal property in the trust be paid to the administrator of his estate, and that the real estate passes to his heirs at law.

*So ordered.*