ROBERT E. GOODWIN, trustee, *vs.* THE NEW ENGLAND
TRUST COMPANY, trustee, and others.

Essex. May 6, 1947. — June 26, 1947.

Present: FIELD, C.J., LUMMUS, QUA, RONAN, & SPALDING, JJ.

*Devise and Legacy,* What estate.

A provision of a home made, inartificially drawn will of a testator of
intelligence giving to a minor grandson of the testator the "interest"
on a sum placed in trust, the "interest of his share to be added to the
principal until he becomes of age," but making no express disposition
of the principal of the trust, in the light of the whole will and known
circumstances, was construed to show an intent by the testator that
the grandson should receive not only the income but also an equitable
estate in the principal, where a preceding provision establishing
another trust gave its income to grandsons if they should elect to take
the testator's surname, the income during a period stated therein for
making the election "to be paid to my estate, as also the principal if
both decline," and where the residuary legatees were daughters of
the testator.

PETITION, filed in the Probate Court for the county of
Essex on September 18, 1946, by the trustee under the will
of Samuel W. Rodman for the benefit of Howard Snelling,
seeking allowance of his third and final account.

By decree of *Phelan,* J., an item showing payment of the
principal of the trust to Amy Snelling, assignee of and ex-
ecutrix under the will of Howard Snelling, was disallowed
and the trustee was ordered to distribute that sum "under
the residuary clause of" the will of Samuel W. Rodman.
The trustee and said executrix and assignee appealed.

In this court the case was submitted on briefs.

*R. E. Goodwin,* for the petitioner, *& A. Snelling,* pro se.

*A. Gardner & H. Campbell,* for The New England Trust
Company, trustee, *& W. J. Speers, Jr., & M. Chapin,* for
The Merchants National Bank of Boston, trustee.

QUA, J. The issue in this case is the construction of the
fifth item in the will of Samuel W. Rodman, executed
December 11, 1889. The testator died in 1906, leaving as

his sole heirs and next of kin a married daughter, Anna L. Snelling, and an unmarried daughter, Emma Rodman. Anna L. Snelling had four children, a married daughter Emma Eldredge, a son Samuel Rodman Snelling, an unmarried daughter Caroline Snelling, and a son Howard Snelling, who had been a minor when the will was drawn, and who died March 6, 1946. Both of the testator's daughters are now deceased.

In our opinion the fourth item of the will sheds light upon the construction of the fifth item. We therefore quote both items in full:

"4th   I give to my daughter Emma, in trust, the sum of Ten Thousand Dollars, the income of which she is to pay to my grandson Samuel Rodman Snelling, if he elects to drop the name of Snelling, and to be known ever after as Samuel Rodman. He is to have three months to make his decision.

"If the said S. R. Snelling declines this offer, I then transfer it to my grandson Howard Snelling, his name to be changed to Howard Rodman, and so always to remain. I give him three months after he becomes of age to decide. The income before these dates to be paid to my estate, as also the principal if both decline. I desire to have a direct male heir of my name.

"5th   I give to my two daughters, in trust, the sum of Seven Thousand dollars; of this the income of $1000 is to be paid to Emma M. Eldredge, the interest of $2500 is to Caroline Snelling, and the interest of $3500 to Howard Snelling. The interest of his share to be added to the principal untill [sic] he becomes of age."

By the seventh item the residue of the testator's estate was given in equal parts to his two daughters, who were appointed "executors." There is nothing elsewhere in the will or in a codicil executed in 1893 that seems helpful in solving the present problem.

The precise question at issue is whether under the fifth item, upon the death of Howard Snelling, the sum of $3,500, the income of which he had been receiving in his lifetime, passed to his estate or to the estates of the two deceased

residuary legatees. In other words, the question is whether the legacy to Howard Snelling (and incidentally those to the other legatees mentioned in the fifth item, all grandchildren of the testator) was of income only or whether it included an equitable estate in the principal as well.

. It will be observed that there are no express words of gift of the principal. Usually perhaps this would be decisive against a gift of the principal, but it is not always and necessarily so. The court cannot add to, or improve upon, the will of the testator. It must derive his intent from the words he used. But it must look at all of his words and must consider them in the light of known circumstances with the sole purpose of discovering his true meaning and must not be diverted from this object by lack of correct and formal legal structure and methods of expression. This rule of construction is fully set forth in the leading case of *Metcalf* v. *First Parish in Framingham*, 128 Mass. 370, at page 374, and in *Fitts* v. *Powell*, 307 Mass. 449, at page 454. Sometimes in this way it will clearly appear that the testator intended something that he has not expressly stated. We think it is so here.

In the first place it should be said that the will as a whole is inartificially drawn. It appears to be the work of a person of intelligence, but it has all the earmarks of a home made will rather than of one drawn by a skilled practitioner. It is the kind of will in which inaccurate and incomplete forms of expression are to be expected.

In the fourth item of the will the testator establishes a trust in the amount of $10,000, the income of which is to be paid to a grandson who will take the Rodman name. [1] There is no express provision in this item for the disposition of the principal upon the death of the beneficiary. There is, however, a provision in the second paragraph of the item that the principal be paid to the testator's estate (that is, fall into the residue) if both grandsons decline the offer. From this it seems a fair inference that the testator believed that, if either of the grandsons accepted the offer,

---

[1] In fact both of the grandsons named declined the offer.

the principal would not "be paid" to the testator's estate, but would go to the estate of the accepting beneficiary. It seems to us that when the testator used the same form of gift in the fifth item he had the same idea of its effect as he appears to have had when he used it in the fourth item.

This indication of the testator's intent is strengthened by the form of the fifth item in that instead of giving to the three grandchildren there mentioned fractional parts of the income of the entire fund he gives to each the entire income from a specified amount, and refers to one of these amounts as "his share." Then again, although all the "interest of his share" is given to Howard, the provision for the adding of interest to principal until he should become of age might result in his never receiving a part of the "interest" given to him, unless the principal goes to his estate at his death. Both of the residuary legatees, daughters of the testator, were of an older generation than the grandchildren mentioned in the fifth item. In the course of nature the residuary legatees would die before the grandchildren. If the grandchildren took only life interests, the estate of each of the two residuary legatees must be reopened no fewer than three times for the distribution of small amounts, probably long after the deaths of the residuary legatees themselves. It is difficult to believe that the testator had any desire to bring about such a result. On the other hand, if the gifts of the fifth item are regarded as gifts of principal as well as of income, and if the grandson Samuel should accept the legacy of $10,000 for a change of name, as the testator no doubt hoped he would, the result would be that each of the testator's grandchildren would receive a definite sum from the testator's estate, the income of which he would be assured in his lifetime, and the testator's daughters would take once and for all the residue of the estate. There may be room for difference of opinion, but we think it sufficiently appears from the will itself that this last result is what the testator intended.

In several of our decisions it has been held that the will as a whole showed that a gift of income was intended to carry the principal with it, although the principal was not

given in express terms. Of these, *Chauncey* v. *Francis*, 181 Mass. 513, is perhaps most nearly in point. But see further *Fay* v. *Phipps*, 10 Met. 341, 343; *Chauncey* v. *Salisbury*, 181 Mass. 516; *Powers* v. *Rafferty*, 184 Mass. 85; and *New England Trust Co.* v. *Scheffey*, 265 Mass. 515. In *Chase* v. *Chase*, 132 Mass. 473, it was said at page 474, "Ordinarily, an unqualified gift of the use, income and improvement of personal estate vests an absolute interest," and this statement is quoted with seeming approval in *Hayward* v. *Rowe*, 190 Mass. 1, 3. In many more cases it has been held that there was nothing to control the absence of an express gift of the principal, and that a life estate only was created. *Keating* v. *Smith*, 5 Cush. 232. *Bartlett, petitioner*, 163 Mass. 509, 521. *Wynn* v. *Bartlett*, 167 Mass. 292. *Boston Safe Deposit & Trust Co.* v. *Buffum*, 186 Mass. 242. *Loomis* v. *Gorham*, 186 Mass. 444. *Stearns* v. *Stearns*, 192 Mass. 144. *Walton* v. *Draper*, 206 Mass. 20. *Cavan* v. *Woodbury*, 240 Mass. 125. *Megathlin* v. *Stearns*, 242 Mass. 326. *Small* v. *Bellamy*, 249 Mass. 244. *Hull* v. *Adams*, 286 Mass. 329. The wills in some of these cases contained words indicative of an intent to limit the gift to a life interest, and in none of them were there other indications of intent comparable to those we have pointed out in the present case.

The decree of the Probate Court is reversed and the cause is remanded to that court for further proceedings consistent with this opinion.

*So ordered.*