BOSTON SAFE DEPOSIT AND TRUST COMPANY & another, trustees, *vs.* PATRICIA W. SCHMITT & another.

Suffolk.    November 2, 1965. — December 6, 1965.

Present: SPALDING, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Devise and Legacy,* Correction of defective expression, Intestacy, Heirs.

Where a will bequeathed the testator's entire estate in trust for his son and two daughters but was silent as to the disposition of a remainder in certain property of the trust in the event, which occurred, of the daughters' deaths without issue subsequent to the death of the son, who was survived by issue, such remainder passed by intestacy to the heirs of the testator; nothing in the will supported a contention that in the circumstances there should be read into it a gift of the remainder to the issue of the son.    [671–673]

Upon a determination that the heirs of a testator, who died in 1902, were the beneficiaries by partial intestacy of a remainder in certain property of a trust established by his will, the heirs should be determined as of the time of his death in the absence of anything showing an intent on his part that they should be determined as of the time for distribution of the remainder.    [674]

PETITION filed in the Probate Court for the county of Suffolk on December 11, 1963.

The case was heard by *Wilson, J.*

*Gardner T. Bolster* stated the case.

*William Minot* for Patricia W. Schmitt.

*Philip P. Wadsworth* for Dorothea W. Barrows, Special Administratrix.

*Erastus H. Hewitt* for Boston Safe Deposit and Trust Company & another, executors, & another.

SPALDING, J.    The trustees under the will of Edward Newton Whittier bring this petition for instructions and for a declaratory decree to determine to what persons and in what amounts the principal and accumulated income of the trust created in the will should now be paid.

The testator died on June 14, 1902, leaving a will which was allowed by the Probate Court of Suffolk County on

July 3, 1902. By his will, he bequeathed his entire estate in trust for the benefit of his son, Edward James Whittier (James), and his two daughters, Cornelia Faxon Whittier (Cornelia) and Anne Pierce Saville (Anne). The relevant portions of the will are as follows:

"Article 1. . . . I give . . . all my property . . . to my Trustees hereinafter named . . . in trust . . . to pay the net income . . . to my three children, Cornelia Faxon Whittier, Anne Pierce Saville, wife of Huntington Saville, and Edward James Whittier, if they shall survive me, as follows:—1. Such proportion of the net income of the entire trust fund as the sum of Twenty Thousand Dollars bears to the appraised value as set forth in the . . . inventory . . . to my son Edward James Whittier. 2. The net income remaining after the payment above provided, to my two daughters Cornelia . . . and Anne . . . in these proportions, Seven tenths to Cornelia . . . and Three tenths to Anne . . . . Provided however that if my daughter Cornelia . . . shall have become married prior to the time hereinafter set for the termination of the trust for my son . . . [James], my daughter Anne . . . being still alive, said net income remaining after the payment to my son . . . [James] above provided shall be paid to my two daughters in equal shares.

"Article II. Upon my son . . . [James] attaining the age of thirty years I direct my Trustees to pay over . . . to him free of all trusts . . . the sum of twenty thousand dollars to his own use . . . absolutely, together with the net income at that time accrued to which he would be entitled under Article I. . . .

"Article IV. Upon the death of my daughter Cornelia whenever it occurs, or upon her marriage subsequent to the time heretofore determined for the termination of the trust for my son . . . [James], or at that time if my said daughter Cornelia shall have become married previous thereto, the trust hereinbefore created for her and for my daughter Anne, if she shall be living, shall thereupon cease . . . and I direct my trustees to pay over . . . the proportional share

of the accrued net income to which each of my daughters
Cornelia and Anne shall be at the time entitled, as herein-
before determined, and also a like proportional share of
the principal sum . . . to my said daughters Cornelia and
Anne to their own use . . . free of all trusts . . . .  Pro-
vided, however, that if the trust is terminated by the death
of my daughter Cornelia the share to which she is entitled
at the time of her decease shall be paid over . . . to her
issue by way of representation, and in default of issue liv-
ing at her death to my daughter Anne if she shall be living,
and if she shall not be living to her issue then living by
way of representation.  And provided further, however,
that if the trust is terminated by the marriage of my daugh-
ter Cornelia subsequent to the termination of the trust for
my son . . . [James] the division of the trust property be-
tween my two daughters shall be in equal shares, share and
share alike, absolutely . . . .

"Article V.  If both of my daughters Cornelia and Anne
shall die before me leaving no issue living at my decease I
direct my Trustees, 1.  to set apart one half of the prop-
erty hereinbefore put in trust for the benefit of Cornelia
and Anne and their issue in trust to pay the net income
. . . to my son . . . [James] during his life and on his
death to pay over . . . the principal sum together with
any accrued income, free of all trusts . . . to his issue by
way of representation, and in default of issue then living
to such persons as he shall appoint by his last will. . . .
2.  to pay over . . . one quarter of said property, free of
all trust, . . . to the husband of Cornelia, if any, living at
my decease [and if he shall not be living at my decease] to
hold said one quarter as part of the trust created under
this article for the benefit of my son . . . [James] during
his life.  3.  [same provision for Anne's husband if he
survives the testator]."

None of the contingencies set forth in articles IV or V
have occurred.  Nor does any other part of the will spe-
cifically provide for the disposition of the trust assets in
the circumstances which have taken place, namely, the

death without issue of both of the testator's daughters subsequent to the death of their brother James. James died May 12, 1942, and is survived by two daughters, the respondents here, Dorothea W. Barrows and Patricia W. Schmitt. Anne died March 14, 1957; Cornelia died September 27, 1962.

The probate judge entered a decree determining that the trust assets should pass by way of intestacy to the personal representatives of the estates of the testator's three children. The respondent Patricia W. Schmitt appealed.

The dispositions set forth in article I are in effect residuary bequests. It is settled that when a bequest of the residue fails, the property passes by intestacy to the testator's heirs. *Old Colony Trust Co.* v. *Stetson,* 326 Mass. 641, 646. *Worcester Trust Co.* v. *Turner,* 210 Mass. 115, 121.

The appellant contends, however, that the failure of this disposition is the result of an inadvertent omission on the part of the testator and that a literal interpretation of the will would frustrate his obvious intention. In effect she asks that the court read into article IV a cross remainder to the issue of the testator's son, James.

In appropriate cases, this court has supplied by implication an omission in the terms of a will. *Metcalf* v. *First Parish in Framingham,* 128 Mass. 370. *Boston Safe Deposit & Trust Co.* v. *Coffin,* 152 Mass. 95. *Sanger* v. *Bourke,* 209 Mass. 481, 486. The controlling factors were set forth in the *Sanger* case, where it was said at page 486, ''Unless there is to be found in the will not only a manifestation of the testator's intention that this fund should be disposed of by the will, but also a clear and certain designation of the persons to whom it is to be paid, it must go as undevised property to his heirs at law. . . . If, however, the language of the will does plainly and distinctly show that he intended a particular disposition of the fund, the court must give effect to that intention.''

The will before us does not reveal any clear and convincing intention that upon the unforeseen failure of the

trust property to vest finally in Anne or Cornelia, or the issue of either, James or his issue should take. By articles I and II, James's portion of the residuary trust is limited to $20,000 and income related thereto, whereas his sisters' shares are fractional. Upon attaining the age of thirty years, James was to receive this sum outright (article II), while the various terms set forth in articles III and IV govern the proportions and terms of distribution of the trust property to Anne and Cornelia or their issue. In this respect, the will is quite unlike that in the *Sanger* case which purported to treat the whole class of beneficiaries equally.

The appellant, however, points to article V as strong evidence that if the testator had foreseen the eventuality which has occurred, he undoubtedly would have added a remainder to James in trust for life, with a remainder to his issue. Article V provides that if both his daughters were to predecease the testator without issue, one half of the property in trust for them would go to James in trust for life and thereafter to his issue free of trust. Also each of the husbands of Anne and Cornelia was to receive one quarter absolutely if living at the testator's death, and, if not, his share was to be added to the trust for James created under article I. These remainders created by article V are operative, however, only upon the specific contingency of both daughters predeceasing the testator. Moreover, the fact that the language creating the remainders is explicit in this section of the will and absent in article IV hardly suggests that the same result was intended. See *B. M. C. Durfee Trust Co.* v. *Franzheim, ante,* 335, 339. Nor can we ignore the fact that if article V had been brought into play, it would have been quite possible for two other persons, the husbands of Anne and Cornelia if they survived the testator, to receive between them some of the trust property outright. Thus even under article V the testator did not manifest the intent that James and his issue be the sole beneficiaries. We think that it would be going beyond permissible limits to read into the will the terms urged by the appellant.

The decree was also correct in providing that the testator's heirs were to be determined at the date of his death. This rule of construction has long controlled in this Commonwealth in the absence of language or circumstances indicating a clear intention that the heirs are to be determined at some other time.[1]  *Childs* v. *Russell,* 11 Met. 16, 23.  *Old Colony Trust Co.* v. *Stephens,* 346 Mass. 94, 96, 97. *Tyler* v. *City Bank Farmers Trust Co.* 314 Mass. 528, 531. *First Safe Deposit Natl. Bank* v. *Westgate,* 346 Mass. 444, 451.  There is nothing in this record to take the case out of the usual rule.  Compare *Fargo* v. *Miller,* 150 Mass. 225, 229–231; *Welch* v. *Brimmer,* 169 Mass. 204; *Brown* v. *Wright,* 194 Mass. 540; *Boston Safe Deposit & Trust Co.* v. *Waite,* 278 Mass. 244, 247–249.

The final decree is affirmed.  Costs and expenses of appeal are to be in the discretion of the Probate Court.

*So ordered.*

---

[1] See now G. L. c. 184, § 6A, inserted by St. 1964, c. 307, § 1, which reads, "In a limitation of real or personal property to a class described as the 'heirs' or 'next of kin' of a person, or described by words of similar import, to take effect in enjoyment upon the happening of an event within the period of the rule against perpetuities, the class shall, unless a contrary intention appears by the instrument creating such limitation, be determined as if such person died at the time of the happening of such event." This section became effective on January 1, 1965, and was to be applicable only to instruments executed after that date.