New England Merchants National Bank of Boston,
trustee, *vs.* Beatrice E. Frost, individually and as
executrix, & others.         .

Suffolk.   November 6, 1969. — April 3, 1970.

Present: Spalding, Cutter, Kirk, & Spiegel, JJ.

*Devise and Legacy*, Intestacy, Conditional gift, Remainder.   *Words*,
"Widow."

Under a will providing in sequence for the establishment of a trust of the
residue of the testator's property, for payment of the income thereof
to the testator's wife during her life, for payment of certain income to
their son for life upon the death of his mother "should he be then
living," and for distribution of a part of the trust principal to certain
beneficiaries upon the son's death, the words "should he be then liv-
ing" manifested an intent that the life interest given to the son, and
not the remainder, be contingent upon the son surviving his mother,
and where it appeared that the son predeceased the testator and that
his mother survived the testator, it was held that such trust principal
did not pass as intestate property of the testator but should be dis-
tributed to the specified remainder beneficiaries.   [164]
Under a will establishing a trust of the residue of the testator's property
and providing in one clause that upon the death of the testator's wife,
should a son "be then living," he should receive certain income from
the trust, and should he "be not then living but have left a widow
then surviving, but no issue, then said widow, during such time as
she . . . [should] remain unmarried" should receive such income,
and, in a different clause, that upon the death of the son "or his
widow," should issue of his survive him, his issue should be paid a
part of the principal of the trust, but should he "leave no widow, or
issue" such principal should be divided among charities, it was held
that the word "widow" in both clauses meant a woman who should
be the son's wife at the time of his death without issue before the
death of his mother and who herself should survive his mother, and
that, where it appeared that he survived his mother and died leaving
a widow but no issue, the trust principal did not pass as intestate
property of the testator but should be distributed to the charities.
[166]

Petition for instructions filed in the Probate Court for
the county of Suffolk on February 9, 1968.

The case was heard by *Keville*, J.

*Virginia Aldrich* stated the case.

*H. Burton Powers* (*Harley M. Smith* with him) for New England Home for Little Wanderers & another.

*James J. Kelleher,* Assistant Attorney General, for the Attorney General.

*Harold L. Hayes, Jr.* (*John C. Creney* with him) for Beatrice E. Frost.

KIRK, J.   This case is before us on appeals by the Attorney General and certain charitable institutions from a decree in the Probate Court entered upon a petition for instructions brought in February, 1968, by the surviving trustee under the will of George Edmund Frost to ascertain whether, to whom, and in what proportions the principal of two trusts is distributable.

The case is before us, as it was before the judge, for consideration and determination on the will of the testator, certain averments in the petition for instructions which were admitted by the parties in their answers, a decree entered in July, 1929, on an earlier petition for instructions, and a stipulation.   We also have a transcript of the brief hearing before the judge.

George Edmund Frost's will dated May 13, 1913, was allowed on September 16, 1920.   The relevant portions of the will provided:

"First:   Having provided for my beloved wife Mary Frances Frost by policies of insurance upon my life, and in a similar way by annuity for my son Clarence Edmund Frost, and in order that the income to be received by my son William Preston Frost, from my estate shall be equal to the income received by my son Clarence Edmund Frost, from the annuities before mentioned, I direct that my trustees hereinafter named shall first set aside from my estate for the benefit of my said son William Preston Frost, such sum of money that the income derived therefrom shall approximately equal the income received by my said son Clarence Edmund Frost, from said annuities; said income to be paid semi-annually to my said son William Preston Frost, during the term of his natural life . . . .

"Second: . . . [Designation of the testator's wife, Mary Frances Frost, as executrix of the will.]

"Third: All the rest, residue, and remainder of my property, both real and personal, I give, bequeath, and devise to my said wife Mary Frances Frost, and Charles Lyman Smith and their successors, in trust, to hold and invest the same, and dispose of the income thereof as hereinafter directed.

"Fourth: . . . [Provision relating to the powers, limitations on liability and succession of the trustees.]

"Fifth: I direct my said trustees to pay the income of the principal of the said trust estate herein created to my said wife Mary Frances Frost during the term of her natural life.

"Sixth: I direct that my said wife shall have the power to dispose of, by will, one third of the principal of said trust estate.

"Seventh: Upon the decease of my said wife, I direct my said trustees to use and pay over the income derived from said trust estate, excepting therefrom the one third part of the principal hereinbefore mentioned, which my said wife shall have the power to dispose of by will; as follows; To my said son Clarence Edmund Frost, should he be then living, one half of the income from the said two thirds of my trust estate hereinbefore mentioned; should my said son be not then living but have left a widow then surviving, but no issue, then said widow, during such time as she shall remain unmarried, to receive said income. . . . [The other clause of article Seventh is identical to that just quoted, except that the name of William Preston Frost is substituted for that of Clarence Edmund Frost.]

"Eighth: Upon the decease of my said son Clarence Edmund Frost, or his widow, should any issue survive him, the principal sum of one half of said two thirds of the said trust estate shall be paid to his issue their heirs or assigns, share and share alike, said shares to be paid to each of said issue upon each of them reaching the age of twenty one years. Should my said son leave no widow, or issue, then

said principal sum shall be divided among [six named charities]."[1]

Article Ninth is identical to article Eighth, except that the name of William Preston Frost is substituted for that of Clarence Edmund Frost.

At the time of the execution of George's will, the testator's family consisted of his wife, Mary Frances Frost, and his two sons, Clarence and William. William at the time was married, without children. Clarence never married, and predeceased the testator who died in 1920.

Mary Frances Frost died testate on March 26, 1928. She named her son William Preston Frost as executor of her will, as appointee of the power of appointment given her under article Sixth of her husband's will, and as her sole residuary legatee.

After Mary Frances Frost's death, William and one Knowlton, the then cotrustees under the will of George, brought a petition for instructions with relation to article First. On July 1, 1929, a decree was entered in the Probate Court which in part directed that the trustees set aside the sum of $25,000 from the estate under article First, invest that sum and pay the income to William for life. The trustees then distributed the residuary trust established under article Third as follows: one third to William as appointee of the power of appointment given to his mother under article Sixth; one third to the six charities named in article Eighth of the will; and one third in trust, the income to be paid to William until his death under article Seventh.

William died in 1967, leaving no issue surviving him, but leaving a widow, Beatrice E. Frost. Beatrice, who was not William's wife at the time of the testator's death, is the executrix of William's will and the sole legatee thereunder.

On the present petition the judge entered a decree which

---

[1] The Preachers Aid Society of the New England Conference of the Methodist Episcopal Church, the New England Deaconess Hospital (named in the will as the Deaconness Hospital), Morgan Memorial Co-operative Industries and Stores, Inc., Thompson Academy (named in the will as Farm and Trades School), the New England Home for Little Wanderers (named in the will as Home for Little Wanderers), and the New England Conference of the Methodist Episcopal Church.

by implication terminated the trust established for the benefit of William in article First of the will. The decree directed that the principal of the article First trust thus terminated, plus the income accrued since William's death, "be disposed of in accordance with the residuary clause of . . . [George's] will" i.e. (a) one third to William's executrix, as William was the appointee under the power of appointment by will given to and exercised by his mother; (b) one third as intestate property of George, the testator, since Clarence, leaving no widow and no issue, predeceased his mother; and (c) "one-third . . . to be added to the share of the residuary trust established for the benefit of William." The decree directed further that the share of the residuary trust for the benefit of William under article Ninth of George's will, as augmented by the one third of the article First trust, pass as intestate property of George. Finally, the decree directed that all funds passing to William under his mother's power of appointment and all funds passing as intestate property of George, whose sole surviving child was William, be distributed directly to Beatrice, the widow of William and the executrix of his will.

The appellants do not challenge that part of the decree by which the trust under article First was terminated and the fund declared to pass to the residuary trust fund established under article Third of George's will. Nor do they challenge that part of the decree which declared that one third of the residuary trust passed to William under the power of appointment granted to and exercised by his mother.

The parties are in controversy over two principal issues: One relates to the judge's determination that of the residuary trust created by article Third, the one-third designated in article Seventh for the benefit of Clarence passed as intestate property of George. The other concerns the judge's determination that of the residuary trust fund created by article Third, the one third designated in article Seventh for the benefit of William, as augmented by the termination of the article First trust, passed as intestate property of George.

These controverted issues concern the construction to be given to George's will. We keep in mind the rule of construction stated by Qua, J., in *Goodwin* v. *New England Trust Co.* 321 Mass. 502, 504: "The court cannot add to, or improve upon, the will of the testator. It must derive his intent from the words he used. But it must look at all of his words and must consider them in the light of known circumstances with the sole purpose of discovering his true meaning and must not be diverted from this object by lack of correct and formal legal structure and methods of expression. This rule of construction is fully set forth in the leading case of *Metcalf* v. *First Parish in Framingham*, 128 Mass. 370, at page 374, and in *Fitts* v. *Powell*, 307 Mass. 449, at page 454. Sometimes in this way it will clearly appear that the testator intended something that he has not expressly stated." In the present case, as in the *Goodwin* case, the will appears to be the work of a person of intelligence but not a skilled practitioner. We also must be mindful that, "A construction of a will resulting in intestacy is not to be adopted unless plainly required, and it is to be presumed that when a will is made the testator intended a disposition of all his property and did not intend to leave intestate estate." *Anderson* v. *Harris*, 320 Mass. 101, 104–105, and cases cited.

A reading of George's will as a whole discloses a testamentary purpose primarily to provide income for his wife for life; upon her death equal income for his two sons; upon their deaths, the principal of each son's share to his issue; to provide, upon specified contingencies, income for widows, if any, of his sons; and, in default of issue of a son, the principal of his share to designated charities. Within its four corners the will discloses a simple plan, an orderly consideration of and provision for the events likely to follow progressively after the testator's death: the recital of life insurance policies payable to his wife, an annuity for Clarence, a direction that the trustees first provide an annuity for William equal to that of Clarence; the establishment of the residuary trust for the stated purposes through-

out their lives, and the ultimate distribution of the principal upon their deaths.

1. We consider the first issue. That part of the decree entered by the judge declaring that the one-third share of the residuary trust designated in article Seventh for the benefit of Clarence passed as intestate property of George is, we think, erroneous. It imports a determination that the share designated for Clarence could not pass to the charities unless Clarence survived his mother. The appellants, citing *Dansereau* v. *Dansereau*, 318 Mass. 363, argue, and we think rightly, that the words "should he be then living" are not to be read to make the gift to the charities thus contingent. The quoted words do not introduce a bequest to Clarence which is later qualified by terms of a trust (cf. the *Dansereau* case at page 364). Rather, the words "should he be then living" in article Seventh come much later in the will than the direction in article Third to the trustees that the trust be established, and they follow a direction to the trustees in article Seventh that the trust estate is to be the source of the income to be paid to Clarence. In this sequence, the words, "should he be then living," manifest an intention that the life estate to Clarence, and not the remainder, be contingent upon Clarence surviving his mother. Where a will provides for a life income with a bequest over, the death of the life beneficiary before the death of the testator simply accelerates the time when the gift over becomes operative. *Thompson* v. *Thornton*, 197 Mass. 273, 275. *Lyford* v. *McFetridge*, 228 Mass. 285, 289. *Smith* v. *Livermore*, 298 Mass. 223, 237–240.

2. The second contested issue concerns the disposition to be made under article Ninth of that share of the residuary trust designated in article Seventh for William's benefit, as augmented by one third of the principal of the article First trust.

As already stated the judge decreed that the share passed as intestate property of George, the testator, whose sole surviving child was William who died without issue. The judge ordered all funds in this share to pass directly to

Beatrice, who is William's widow and executrix of and sole legatee under William's will. On this issue also we must examine the whole will to determine if the construction given to it by the judge is right. We "must look at all of . . . [the testator's] words . . . with the sole purpose of discovering his true meaning." *Goodwin* v. *New England Trust Co.* 321 Mass. 502, 504. Here again the judge's construction results in intestacy, a result to be avoided unless plainly required. *Anderson* v. *Harris,* 320 Mass. 101, 104–105, and cases cited.

It is our view that a construction resulting in intestacy under article Ninth not only is not required, but that there is also "to be found in the will . . . a clear and certain designation of the persons to whom . . . [the fund] is to be paid." Where this is shown "the court must give effect to that intention." *Sanger* v. *Bourke,* 209 Mass. 481, 486. *Boston Safe Deposit & Trust Co.* v. *Schmitt,* 349 Mass. 669, 672.

In 1913 when George made his will, his son Clarence was single and without issue. Son William was then married to a person other than Beatrice, his present widow and appellee, and had no children. In each of two separate but identical clauses in article Seventh the testator George directed that upon the death of his wife Mary, the income of one half of two thirds of the trust estate be paid to a named son should he be then living. Each of these two clauses in article Seventh concluded with the words, "should my said son be not then living but have left a widow then surviving, but no issue, then said widow, during such time as she shall remain unmarried, to receive said income." This closing provision in the two clauses of article Seventh is the only provision in the entire will affirmatively making provision for a widow. The widow thus defined and envisioned in article Seventh was non-existent but was to be the product of a combination of a specified set of circumstances: that the son (a) predecease his mother (Mary); (b) leave a widow who would be living at the time of his mother's death; and (c) leave no issue. Such a widow was entitled to income so long as she remained unmarried.

The closing provision in the two clauses of article Seventh relating respectively to income for Clarence and William are followed by articles Eighth and Ninth which relate respectively to the disposition of the principal sums of Clarence and William. The opening words of articles Eighth and Ninth are: "Upon the decease of my said son . . . [Clarence or William] or his widow." The juxtaposition of the closing words in the clauses of article Seventh with the opening words in the corresponding articles Eighth and Ninth strongly suggests that the testator had the same "widow" in mind. Indeed the opening words of articles Eighth and Ninth almost compel that conclusion. They imply a reservation of income for the son "or his widow" before the principal sum may be paid over to "issue" or to charities. The only widow who would be entitled to income would be one who emerged from the combination of circumstances specified in article Seventh. It is true that the specified set of circumstances never came to pass and no widow was ever eligible to receive income under article Seventh. In 1913, however, it was not unlikely that there would be such a widow. The testator in anticipation of the event made provision in articles Eighth and Ninth to keep intact the principal sums so that income could be paid to the eligible widow "during such time as she shall remain unmarried."

Our conclusion is that "widow" in articles Eighth and Ninth means a widow who met the specifications of article Seventh. Thus read, the will becomes a harmonious whole. Thus construed, the words "or his widow" and "no widow" in articles Eighth and Ninth have a positive or affirmative meaning. They advance the testator's intent. They carry forward into articles Eighth and Ninth the concern shown by the testator in article Seventh for a son's widow living at the time of the testator's wife's death, by insuring continued income for her until death or remarriage. Thus construed, the way is cleared for the designated residuary legatees eventually to take under the will. Thus construed, intestacy, which the testator obviously did not want, is avoided.

The appellee Beatrice Frost argues that the words "no widow" in article Ninth refer to any widow, irrespective of whether she was a beneficiary under article Seventh. She would have us believe that there being no issue, the survivorship of a widow not intended as a beneficiary should operate to defeat the testator's bequest to the charities which he plainly did intend to benefit. To give such a construction to the words, "[s]hould my said son leave no widow," would require that we ignore the words of article Seventh. It would give to the words "no widow" in article Ninth a negative rather than a positive effect. It would thwart rather than advance the testator's intention. It would make article Ninth self-contradictory or self-defeating in that a nonbeneficiary would not merely block an expressly intended beneficiary but would produce an intestacy. We decline to adopt such a construction.

3. The decree must be reversed. A decree is to be entered providing that: (1) The trust under article First passes as part of the residuary clause and is to be distributed: (a) one third as appointed by the testator's widow, Mary; (b) one third to the charitable institutions named in article Eighth; (c) one third to the residuary trust for the benefit of the son William. (2) The principal and the accumulated interest of the trust for the benefit of the testator's son William are to be distributed to the charitable institutions named in article Ninth.

Counsel fees and expenses are to be allowed as determined by the Probate Court.

*So ordered.*