**Emma A. NICHOLSON, Appellant,**

v.

**Ralph SORENSEN, Executor of the Estate of Emil Peter Sorensen a/k/a Emil Peder Sorensen, Deceased, Appellee.**

**No. 1881.**

Supreme Court of Alaska.

Dec. 28, 1973.

---

33. *Id.*

Robert N. Opland, Anchorage, for appellant.

J. L. McCarrey, Jr. and J. L. McCarrey, III, Anchorage, for appellee.

Before RABINOWITZ, Chief Justice, and CONNOR, FITZGERALD, and BOOCHEVER, Justices.

## OPINION

BOOCHEVER, Justice.

Emil Peter Sorensen (hereinafter, the grandfather) died leaving a will which made no provision for four grandchildren who were alive at the time of the execution of the will. The guardian of the grandchildren filed a petition for a determination of heirship, claiming that the grandchildren were entitled to the shares of the estate which they would have received if their grandfather had died intes-

tate. The superior court approved the findings and recommendations of a master and denied the petition, from which judgment this appeal has been taken.

The grandfather's son, Emil Laurence Sorensen, predeceased him on February 5, 1967, and the grandfather served as administrator of his son's estate from January 24, 1968 until his own death on February 2, 1972. He was serving as administrator when he executed his will on January 7, 1969; moreover, he was living in the small community of Dillingham, Alaska where the four grandchildren (the children of his deceased son) also resided. On the basis of these facts, the master found that the failure to mention the grandchildren in the will was not an oversight.

Alaska's present pretermission statute,[1] AS 13.11.115, became effective as part of the Uniform Probate Code[2] on January 1, 1973, and provides in pertinent part:

> Pretermitted Children. (a) If a testator fails to provide in his will for *any of his children born or adopted after the execution of his will,* the omitted child receives a share in the estate equal in value to that which he would have received if the testator had died intestate . . . (emphasis added).

The plain language of the statute indicates that subsection (a) applies only to the testator's *children,* and only to those of his children born or adopted after the execution of the will. Thus, under the new statute even if Emil Sorensen's grandchildren (who were alive at the time of the execution of the will) successfully argued that they were claiming through the estate of their father (the testator's son) so as to come within the "children" term of the statute, the fact that their father was not "born or adopted after the execution of [the] will" would defeat recovery. If, in the alternative, the grandchildren argued that "children" should be interpreted to mean "issue" (a dubious argument), the fact that the grandchildren were alive at the execution of the will would also defeat recovery. Under the new probate code, the appellant would clearly have no right of action.

The former statute, AS 13.05.170, however, provided in pertinent part:

> RIGHTS OF CHILDREN OR THEIR DESCENDANTS. If a person makes his last will and dies, leaving a child or children, or descendants of the child or children in case of their death, not named or provided for in the will, although born after the making of the will or the death of the testator, the testator, so far as regards the child or children or their descendants not provided for, is considered to die intestate. The child or children, or their descendants, are entitled to such proportion of the estate of the testator, real and personal, as if he had died intestate, and the same shall be assigned to them, and all the other heirs, devisees, and legatees shall refund their proportional part.

The new probate code was enacted in 1972, and § 5 of chap. 78, SLA 1972 expressly repealed former Title 13, of which this earlier pretermission statute was a part.

The executor argues that this repeal means that all pending proceedings are to be governed by the new law. But it is a generally accepted canon of construction that heirship is to be determined as of the date of death.[3] We note also that it

---

1. A pretermission statute applies when a testator fails to mention his children (and sometimes other descendants) in his will. It usually provides that such child or the children of a deceased child shall share in the estate as though the testator had died intestate.

2. AS 13.06.005 et seq.

3. Bank of Delaware v. Hitchens, 173 A.2d 339 (Del.Ct.Chan.1961); Boston Safe Deposit & Trust Co. v. Schmitt, 349 Mass. 669, 212 N.E.2d 202 (1965); In re Kirkpatrick, 39 Misc.2d 133, 240 N.Y.S.2d 342 (N.Y.Sur.Ct. 1963); Philpott v. Yeoman, 6 Or.App. 498, 488 P.2d 811 (1971); Dean v. Lancaster, 233 S.C. 530, 105 S.E.2d 675 (1958). *See generally* 4 Page on Wills § 34.4 (3rd ed. 1961).

would be at least anomalous to have the former statute apply at the trial level and the superseding statute apply on appeal due to the fortuitous circumstance that the new code became effective in the interim.

The executor of the grandfather's estate argues that even if AS 13.05.170 of the former code controls, it applies only to those descendants born after the making of the will or after the death of the testator. It is his contention that the clause "although born after the making of the will or death of the testator" is meant to restrict the class of pretermitted heirs to afterborn descendants, rather than to enlarge the class of pretermitted heirs.

We conclude that the clause is permissive, because:

a.  The plain meaning of "although" is permissive. If the legislature had wished to make the "afterborn" provision a restrictive rather than a permissive phrase, the use of "if" would have been more logical;

b.  Since a "pretermitted heir" is a child or descendant *omitted* by the testator, the argument might be made, in the absence of the permissive "afterborn" provision, that one had to be in existence at the time of the execution of the will to be "omitted" by the *testator*. Thus, it seems that the purpose of the clause was to enlarge the class to include children or descendants who were born after the making of the will.

c.  The use of two time periods in the statute (*i.e.,* born either (1) after the making of the will or (2) after the death of the testator) implies that the purpose of the provision was to enlarge the protected class rather than restrict it. If the purpose of the clause was to restrict the class, simply using the phrase "after the making of the will" would have eliminated any children in existence at the time of the execution of the will (the result contended for by appellee).[4]

While there is no Alaska case authority directly in point concerning whether the statute is limited to afterborn children, the Alaska statute was derived from a similar Oregon statute,[5] formerly codified as ORS 114.250,[6] and we find persuasive the decisions of the Oregon courts regarding Oregon's former statutory counterpart to AS 13.05.170.

In Barnstable v. United States National Bank, 232 Or. 36, 374 P.2d 386 (1962), the question before the court was whether an adopted child was entitled to recover under the statute where the will had incorrectly referred to her as a "foster child". While the rationale of the decision did not turn

---

4.  The clause "after the making of the will" specifically refutes any contention that the heirs had to be in existence at the execution of the will to be "omitted" by the testator; the phrase, "after the death of the testator", refutes any contention that the language ". . . and dies, *leaving* a child. . . ." (emphasis added) means that the child had to be in existence at the death of the testator.

5.  The Oregon statute was adopted for Alaska by the United States Congress in 1900; *see* the Carter Code of June 30, 1900, chap. 15, § 143; the Compiled Laws of the Territory of Alaska of 1913, § 569, p. 304; the Compiled Laws of Alaska, 1933, § 4617, p. 890; and the Alaska Compiled Laws of 1949, § 59–4–1. The language of the statute remained essentially unchanged until the 1962 codification of the Alaska Statutes. The minor changes in wording in the 1962 codifi-

cation were no doubt made by the codifier for the sake of clarity; they in no way change the sense of the statute or otherwise affect the provisions here under consideration.

6.  Repealed ch. 591, § 305 (1969). The statute provided:

If any person makes his will and dies, leaving a child or children, or, in case of their death, descendants of such child or children, not named or provided for in such will, although born after the making of such will or death of the testator, every such testator, so far as regards such child or children or their descendants, not provided for, shall be deemed to die intestate; and such child or children, or their descendants, shall be entitled to such proportion of the estate of the testator, real and personal, as if he had died intestate . . . . .

on it, the court did assume that the statute was applicable even though the child was alive and had been adopted at the time of the execution of the will. Similarly, in Towne v. Cottrell,[7] the Oregon court assumed that the statute was applicable to grandchildren alive at the time of the execution of the will.[8]

█ Thus, both the statutory language and the manner in which a similar statute had been construed by the Oregon courts persuade us that AS 13.05.170 of the former probate code was applicable to grandchildren alive at the time of execution of a will.

This now brings us to the focal issues of the case: may the intent of the testator be considered in applying AS 13.05.170 and, if so, must such intent be determined solely from the four corners of the will without reference to extrinsic evidence?

█ The statute, read literally, implies that any person who is in the protected class and is not "named or provided for in the will" is entitled to recover as an intestate heir. In construing the statute, however, we must look to its purpose. As we have indicated, the statute originated in Oregon; accordingly, it is presumed that it

was adopted with the interpretation that had been placed upon it by the Oregon Supreme Court prior to 1900.[9] In Gerrish v. Gerrish,[10] the Oregon Supreme Court stated:

> Our statute is an exact copy of the Missouri statute, and the courts of that State having been called upon frequently to construe it, we must look principally to the decisions of that State to ascertain its proper judicial construction. In that State it is held that the statute does not require that an actual provision shall be made for the children, nor that the children shall be designated by name; that its object is not to compel parents to make testamentary provision for children, but to prevent the consequences of forgetfulness or oversight.[11]

Thus, the presumed purpose of the Alaskan pretermission statute was not to create any "rights" of inheritance in the protected class similar to common law dower, so that the testator would be assumed as a matter of law to have intended to provide for unnamed children or descendants unless he explicitly excluded them; rather, its intent was to protect those children or descendants from an *unintentional* disinheritance.[12]

---

7. 236 Or. 151, 387 P.2d 576 (1963).

8. *See also* In re Halle's Estate, 29 Wash.2d 624, 188 P.2d 684 (1948), implying that the Washington pretermission statute (which is also similar to the Alaska statute) applies to heirs in existence at the time of execution of a will.

9. While a construction of a similar statute by the highest court of another state rendered after adoption of the statute by Alaska may be persuasive, a statute is presumed to have been adopted with the interpretation that had been placed upon it prior to its Alaska enactment by the highest court of the state from which it was taken. City of Fairbanks v. Schaible, 375 P.2d 201 at 207–208 (Alaska 1962).

10. 8 Or. 351 (1880).

11. *Id.* at 354.

12. Although there is a wide discrepancy in the language of the pretermission statutes from state to state, most fall within two general types, either the "Massachusetts" or

the "Missouri" formulas. The Massachusetts prototype usually provides that an omitted heir has the rights of an intestate's heir unless it appears that the omission was intentional, and not occasioned by accident or mistake. The Missouri genre simply provides that if said heir is "not named or provided for in the will," intestacy rights attach.

While the early cases applied this distinction strictly so as to consider intent where the Massachusetts-type statute was involved (see cases at 65 A.L.R. 473–474) and to ignore intent where the Missouri-type was involved (cases at 65 A.L.R. 481–482), the modern trend is to consider intent in both situations. 170 A.L.R. 1317 (1947); 88 A.L.R.2d 616 (1963). Thus, even though the former Oregon statute, ORS 114.250, and the former Alaska statute, AS 13.05.170, were Missouri-type statutes with no specific provision for the intent of the testator, the Oregon court has consistently held that the intent is to be considered. Towne v. Cottrell, 236 Or. 151, 387 P.2d 576, 577 (1963); Barnstable v. United States National Bank, 232 Or. 36,

There is then ample authority for looking to the intent of the testator in determining the applicability of AS 13.05.170. The grandfather's will contains detailed provisions for a guardianship and two trusts, but nowhere therein is there a reference to his deceased son, Emil Laurence Sorensen, or his children. Evidence extraneous to the will is more than sufficient to sustain the finding of the superior court that the grandfather intentionally omitted reference to the grandchildren, and that the failure to name or otherwise provide for them was not the result of oversight. The grandfather had served as administrator of his son's estate for approximately one year at the time he executed his will. Moreover, he lived in the small community of Dillingham,[13] where the grandchildren also resided. If extraneous evidence can be considered, the decision of the court below upholding the terms of the will should be affirmed; but if the intent of the testator may be ascertained only by reference to the express terms of the will, the grandchildren would inherit by operation of law.

Looking again to the Oregon decisions, we find three recent cases which touch on this question. In Voden v. Yates,[14] the Oregon Supreme Court stated that:

> We first read the will, which was drafted with the aid of counsel, to ascertain whether the intention of the testatrix can be determined. This intention is required to be ascertained from the language of the will. ORS 114.210.[15]

But in Philpott v. Yeoman,[16] an Oregon appellate court did look outside the will to divine whether the decedent had intentionally or inadvertently neglected to mention two of her grandchildren in her will:

> Here the trial court, after hearing the testimony, concluded appellants were intentionally omitted. The evidence showed that the testatrix was fully aware of the existence of both of them. It also showed that the relationship between her and her son, Otto Bronson, and the members of his family, including the appellants, became one of estrangement and upon occasion even of bitterness and obloquy, and that this continued after the death of Otto Bronson. We agree that the appellants were not unintentionally omitted and that the decedent was fully aware of their existence at the time she executed her will.[17]

The Oregon Supreme Court had similarly looked beyond the four corners of a will in Towne v. Cottrell.[18] The decedent in that case had left a will in which she named her two living children and stated, "My son Thomas A. Towne has predeceased me." She provided for one of Thomas's children but made no mention of the other three. Looking to the will itself, there could have been either an intentional disinheritance of the three grandchildren or an inadvertent omission due to lack of knowledge of their existence. But the defendant children had admitted that they were known to the decedent. In upholding the lower court's decision to enforce the terms of the will against the claim that the pretermission statute should apply, the court stated:

> When we look to the reasons behind the statute, it appears probable in this case that the testatrix had neither forgotten nor unintentionally omitted her granddaughters. The fact that they were known to her is admitted by the defendants, although they now claim that their allegation of this fact in their answer does not mean that the grandchildren were in her mind at the time of making of the will. This contention strains the

374 P.2d 386 (1962); Gerrish v. Gerrish, 8 Or. 351 (1880).

13. According to the 1967 U.S. Census, Dillingham's population was 424.

14. 252 Or. 110, 447 P.2d 94 (1968).

15. *Id.* at 95.

16. 6 Or.App. 498, 488 P.2d 811 (1971).

17. *Id.* at 815.

18. 236 Or. 151, 387 P.2d 576 (1963).

inferences to be drawn from such allegation.[19]

Thus, the court relied on facts ascertained outside the four corners of the will (although they could be found in the pleadings). In this appeal, the finding of the superior court as to the testator's intent is supported by the fact that he served as administrator of his son's estate and filed pleadings therein indicating that the grandchildren were known to him and resided in the same small community as the grandfather. The court below could properly take judicial notice of the contents of the pleadings filed in the probating of the son's estate.[20]

■ We fail to see a basis for distinguishing between the superior court's consideration of facts to be found in pleadings relating to other matters filed in the same court, on the one hand, and the Oregon court's reliance upon facts contained in the pleadings filed in the very case involving the pretermission statute, on the other. In each instance, evidence of intent obtained from very restricted sources extraneous to the will is relied upon. In both instances the underlying purpose of the pretermission statute is not defeated; a child or his descendant is protected against an unintentional omission in a will. Because intent is to be determined only from uncontroverted facts established by pleadings or from an inspection of the will itself, the floodgates have not been opened to permit all manner of testimony that might hypothetically touch on a testator's intent. Thus, to the limited extent that the testator's intention may be ascertained from matters of record, we hold that it is permissible to look beyond the four corners of the will to ascertain the applicability of AS 13.05.170.

■ In this case, the grandfather was cognizant of the death of his son, the existence of his grandchildren, and the inheritance available to them and their mother by virtue of the son's estate, which the grandfather was administering. The superior court's finding that the omission of the grandchildren was intentional is thus supported by the evidence, and the judgment below is affirmed.[21]

Affirmed.

ERWIN, J., not participating.

19. *Id.* at 577–578.

20. Shuttlesworth v. City of Birmingham, 394 U.S. 147, 157, 89 S.Ct. 935, 22 L.Ed.2d 162, 171 (1969); Wells v. United States, 318 U.S. 257, 260, 63 S.Ct. 582, 87 L.Ed. 746, 748 (1943); In re Martin's Retail Liquor License No. 1517, 15 Alaska 171 (1954); Application of Capper, 11 Alaska 480 (1948).

21. Our opinion is addressed solely to the construction of AS 13.05.170 and has no application to AS 13.11.115 of the new probate code, which contains express guidance for determining intent.