ROLAND E. BURBANK & another *vs.* CHARLES H. BURBANK & others.

Berkshire. September 9, 1890. — October 23, 1890.

Present: FIELD, C. J., DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Public Charity — Compromise of Bequest to Town — Parties — Attorney General.*

On a bill in equity, under the Pub. Sts c. 142, §§ 14–17, to establish a compromise of a charitable devise for the benefit of a town, the Attorney General alone can represent those beneficially interested; and inhabitants of the town, with no peculiar or immediate interests therein distinct from those of the public, cannot intervene by petition to oppose the compromise, or appeal from a decree settling the terms thereof.

DEVENS, J. This is a bill in equity, brought under the Pub. Sts. c. 142, §§ 14–17, (see St. 1889, c. 266,) by certain of the heirs and next of kin of Abraham Burbank, to establish and authorize a compromise between themselves and the town of Pittsfield of a bequest and devise made by him to the town for certain purposes. A petition was filed by ten citizens of the town, praying that no compromise be permitted on the basis proposed. The Attorney General was made a party defendant, to represent all the rights or interest which the public might have, and answered that, after careful examination, he did not care to be further heard, and that he had no objection to the granting of the prayer of the bill. The case was heard by a single justice of this court, and a decree was entered settling the terms of the compromise; and from this decree the petitioners entered an appeal.

It is primarily to be considered whether the case at bar is regularly before us by appeal, and whether the petitioners have such an interest in the subject matter thereof that they were entitled to become parties to the original proceeding, and to appeal from the decree rendered therein.

The proposed compromise is to be effected by the present payment of a certain sum of money, and by conveyance of a certain tract of land by such heirs and next of kin, in lieu of the rights which the town will some years hereafter acquire in the estate

of Abraham Burbank in property to be held by it in trust for certain purposes set forth in his will. By the twenty-third article of Abraham Burbank's will, he devised the income of certain specified property for life to his children and grandchildren; the property to be held in trust, and this trust to continue until the death of the last survivor of his children or grandchildren, then to be transferred to the town of Pittsfield. By the twenty-fourth article, he devised and bequeathed one half of the income of all the rest of his property not specifically disposed of to his children and grandchildren for life, this trust to continue until the death of the last survivor. The twenty-fifth article gave to the town of Pittsfield the rest and residue of his estate, including the one half of the income not before disposed of, for the purpose of establishing a fund and maintaining a hospital for the benefit of "infirm, afflicted, or unfortunate persons who are residents of said Pittsfield at any time, and who may be admitted into said hospital by the officers or authorities thereof for treatment; and also for all who may reside elsewhere, and who may be admitted therein for treatment." The twenty-sixth article devises to the town, at the death of the last survivor of his grandchildren, a tract of land for a park. The bequest and devises to the town are accompanied by many onerous duties and responsibilities, to be assumed by the town of Pittsfield, as well as payments of money to be made by it, extending over the long period which must elapse before, in the course of nature, the last surviving child or grandchild will decease. They are also subject to provisions and conditions upon the occurrence of which they will become void, some of which conditions have no relation to the property devised, but refer to the action of the town in regard to other matters. It is clear that the trust conferred upon the town could not be executed by any one else, assuming that the town is itself competent to do so. We do not find it necessary to recapitulate these various duties and responsibilities, or to consider their character and that of the conditions sought to be imposed, in determining the limited question we are now discussing.

The testator sought by his will to form a fund, and thereby to establish a hospital for the benefit of the residents of Pittsfield, and others who might be there admitted for treatment. That

this is a public charity requires no citation of authorities. The establishment of hospitals is, indeed, one of the objects enumerated in the Statute of 43 Elizabeth, c. 2. The proposed devise of the testator of a tract of land for a park was also a public charity. Bequests to improve a town, as by providing for a public garden, by improving its streets, or by providing for the planting of shade trees, have been held to be of this character. 2 Perry on Trusts, § 704. A gift is a public charity when there is a benefit to be conferred on the public at large, or some portion thereof, or upon an indefinite class of persons. Even if its benefits are confined to specified classes, as decayed seamen, laborers, farmers, etc. of a particular town, it is well settled that it is a public charity. *Kent* v. *Dunham*, 142 Mass. 216.

The petitioners show no other interest in these charitable devises and bequests than that of the general public and of all other citizens of Pittsfield. They appear to have filed their petition without any leave of court so to do, and have sought to bring here by appeal the decree sanctioning the proposed compromise, which was rendered by a single justice, after a hearing to which the Attorney General was a party. They claim the right ·to represent the beneficiaries of this charitable trust, and complain in their brief that this decree has been rendered " without the appointment of trustees to act for the beneficiaries, and without the concurrence or assent of the beneficiaries, and without such beneficiaries, or trustees for them, being made parties thereto," etc. But the law has provided a suitable officer to represent those entitled to the beneficial interests in a public charity. It has not left it to individuals to assume this duty, or even to the court to select a person for its performance. Nor can it be doubted that such a duty can be more satisfactorily performed by one acting under official responsibility than by individuals, however honorable their character and motives may be. " The Attorney General," says Mr. Tudor, " as representing the Crown, is the protector of all the persons interested in the charity funds. He represents the beneficial interest; consequently, in all cases in which the beneficial interest requires to be before the court, the Attorney General must be a party to the proceedings." Tudor, Charities, (3d ed.) 323. *Ware* v. *Cumberlege*, 20 Beav. 503, 511. *Strickland* v. *Weldon*, 28 Ch. D. 426, 430. No proceedings

in regard to a public charity, no matter how general the assent of those beneficially interested, would bind him if not made a party, nor can any proceeding in regard to a public charity to which he has been made a party be invalidated by those beneficially interested, but having no peculiar and immediate interests distinct from those of the public. This duty of maintaining the rights of the public is vested in the Commonwealth, and it is exercised here, as in England, by the Attorney General. *Jackson* v. *Phillips*, 14 Allen, 539. Pub. Sts. c. 17, § 6.

The petitioners have, therefore, no proper standing before this court. Through the Attorney General, who is the guardian and protector of their interests, they have been fully represented and heard. *Appeal dismissed.*

*T. P. Pingree*, for the petitioners.
*E. M. Wood & W. Turtle*, for the heirs and next of kin.