MICHAEL T. ELIAS & others *vs.* GREGORY STEFFO & others.

Worcester. September 22, 1941. — November 24, 1941.

Present: FIELD, C.J., QUA, DOLAN, COX, & RONAN, JJ.

*Voluntary Association. Trust*, Charitable. *Attorney General. Equity Pleading and Practice*, Master: findings; Parties. *Equity Jurisdiction*, To enforce trust.

Where a master's report does not state nor show that his ultimate conclusion was based solely on the subsidiary findings recited, and the evidence is not reported, his conclusion, if not inconsistent with such subsidiary findings, must stand as binding on the trial court and this court.

Findings by a master showed that the plaintiffs, in collecting money and turning it over to a society, were merely a committee which was part of and under the control of the society, and were not a separate organization; and the plaintiffs were not entitled to the money.

The members of a committee of a voluntary association, who under the control and as a part of the association had collected and turned over

to it funds to be used for a charitable purpose, had no standing to maintain a bill in equity to enforce a proper administration of such funds; such enforcement was the exclusive function of the Attorney General.

BILL IN EQUITY, filed in the Superior Court on December 4, 1937, and afterwards amended.

From a final decree dismissing the bill, entered by order of *Broadhurst*, J., the plaintiffs appealed.

The case was submitted on briefs.

*G. N. Prifti, H. H. Hartwell, & J. F. Driscoll,* for the plaintiffs.

*Nicholas Fusaro & Nunziato Fusaro,* for the defendants.

DOLAN, J. This is a bill in equity in which the plaintiffs seek to establish their title to certain deposits in the People's Savings Bank of Worcester and in the Worcester Five Cents Savings Bank standing in the name of the Benevolent Association of the Drenovar's of America Bashkimi, and that their "right . . . to the books, papers and records held by the defendants Elia and Steffo be established and determined and when so determined [that] the defendants [be] ordered to deliver the same to the" plaintiffs. The bill was originally brought in the name of Llaso Day of Drenova and the town of Drenova in Albania against the Benevolent Association of the Drenovar's of America Bashkimi and others, including the defendant banks hereinbefore referred to. By amendment there were substituted as parties plaintiff in place of "Llaso Day of Drenova" certain individuals claiming to be members of an association called "Llaso Day of Drenova," hereinafter called Llaso, and as parties defendant in place of the Benevolent Association of the Drenovar's of America Bashkimi certain individuals alleged to be officers, committeemen, former officers and members of that association.

It is alleged in the bill that the Llaso is a voluntary "organization" which accumulated a fund of money for certain purposes; that the money so accumulated was deposited in the defendant banks; that thereafter the Benevolent Association of Drenovar's of America Bashkimi took possession of the fund, mingled it with moneys of that

association, hereinafter called the society, and now threatens to use it for purposes of the society, not the same as those for which the fund was created.

The case was referred to a master and an interlocutory decree was entered confirming his report. A final decree was entered dismissing the bill, from which the plaintiffs appealed.

Subsidiary findings of the master disclose that certain individuals living in this Commonwealth who were born in Drenova, Albania, organized a voluntary association in 1910 called the "Benevolent Brotherhood of Drenova Profit Elia." It was successfully carried on, its name and purposes being changed from time to time. In 1914 its name was changed to "Benevolent Society of Drenovars Bashkimi" and in 1930 to "Benevolent Society Bashkimi of Drenovars in America." "This association . . . is the Society of which the defendants are members and officers." In its by-laws as most lately amended in 1930 the statement of the objects of organization begins as follows: "The purpose of this Society is charity." Then follows the further stated purpose of rendering financial assistance to members in case of illness or death. At a meeting of the society held on June 15, 1918, a vote was passed "to name a day for Llaso, and the contributions to be collected, and for what purpose to be discussed at another meeting." "The whole phrase, 'Llaso Day of Drenova' means collection day for the town of Drenova." At a meeting on July 12, 1918, an acting committee for Llaso was named, consisting of five members of the society. This committee organized by electing a president, secretary and treasurer. From time to time membership in this committee changed, but always "by vote of this society." Financial statements were made regularly by officers of the committee to the society and were approved or disapproved by vote of the society. The Llaso continued to function until July 23, 1927, when the society voted that the duties of the Llaso be taken over by the society. Prior thereto the Llaso had engaged in activities to raise money for the purpose of promoting the welfare of the town of Drenova and its inhabitants. That

was "the general and common understanding of all the Drenovars, participants to the Llaso or otherwise." As soon as realized by the Llaso the moneys were all delivered to the treasurer of the society. During the time the Llaso was collecting these funds, the purposes of the society as set out in its by-laws were "benevolence for the Town of Drenova; assistance for every member and every Drenovar who is a member of this society and a resident of this town." Certain sick benefits were provided for members and their minor children, and provisions were made for transportation of sick members to the "fatherland," and for payments for funeral honors to deceased members.

The ultimate findings of the master bearing on the rights of the Llaso to the funds in question are these: that "Llaso Day of Drenova was not an independent association, but [was] merely a committee selected by the Society Bashkimi and was at all times under the control and a part of" that society; that the disposition of the money collected by the "Llaso Day Committee" was not subject to the control of the committee; that the function of the committee was to collect money and pay it over immediately to the treasurer of the society; that as a result the society became the legal owner of the funds so collected, and could use or distribute them for the benefit of the inhabitants of the town of Drenova; that the funds were held for a charitable purpose; and that payments for the benefit of the inhabitants of Drenova had been made in excess of the amount collected by Llaso. The evidence is not reported, and the report of the master does not state or show that his ultimate findings are based solely on the subsidiary facts set forth therein. Since the subsidiary facts found by the master are not inconsistent with his ultimate findings, the ultimate findings were binding on the judge and are binding on us. *Dodge* v. *Anna Jaques Hospital*, 301 Mass. 431, 435. It follows that the plaintiffs are not entitled to the funds in question or to the books, papers and records, delivery of which they seek.

In connection with the administration of the funds the master found that the funds collected by the Llaso had

been mingled with those of the society "in making up . . . [its] treasury," and had been used indiscriminately for the purposes of the society as well as for contributions to the town of Drenova; that the members of the society assert "their right" to use the funds so collected for general purposes of the society and had in fact used a portion of them in carrying out its general purposes, though always. in accordance with a vote of the society.

Assuming, however, without deciding, that the findings of the master would support conclusions that the funds in question constituted a charitable trust and that it was not being properly administered, it is settled that neither the individual plaintiffs nor the plaintiff town of Drenova has any standing to enforce the proper administration of the funds. It is the exclusive function of the Attorney General to "enforce the due application of funds given or appropriated to public charities within the commonwealth, and prevent breaches of trust in the administration thereof." G. L. (Ter. Ed.) c. 12, § 8. *Dillaway* v. *Burton,* 256 Mass. 568, 573, 574, and cases cited. *Judkins* v. *Hyannis Public Library Association,* 302 Mass. 425, 427.

> *Interlocutory decree affirmed.*
> *Final decree affirmed with costs.*