Fiduciary Trust Company, trustee, *vs.* State Street Bank and Trust Company, executor, & others.

Middlesex.     November 5, 1971. — December 16, 1971.

Present: Tauro, C.J., Cutter, Quirico, & Braucher, JJ.

*Devise and Legacy,* Income beneficiary, Remainder, Construction against intestacy. *Words,* "Share."

Where the terms of a residuary testamentary trust provided that the net income was to be paid to the testator's children "during their natural lives, the whole of said net income to be divided among . . . |the| children equally, the children of deceased children to take by representation their parents share," it was held that the word "share" referred only to income, so that income alone was to be distributed while there were children of the testator alive, that the trust principal was not to be distributed until the death of the last survivor of the testator's children, and that any child of the testator dying without issue retained no share of the income. |653-654, 655-657|

Where the above will also provided that "|w|ith regard to the final distribution of said trust fund, it is my wish that the child or children of any child of mine upon the death of such child of mine, shall receive by representation their parents share of the net

income of said trust property until they reach the age of twenty one years, & as they severally attain the age of twenty one years, I direct my said Trustees to pay over and convey absolutely & free from any trust to them the same fraction of the principal of said trust property, as they severally received of the net income before attaining that age," and where the testator left five children surviving him, of whom four, including the last survivor, died without issue, and one left children who survived the last surviving child of the testator and attained the age of twenty-one, it was held, reading the terms of the trust as a whole, and interpreting it to avoid intestacy, that the grandchildren of the testator were entitled to the entire trust principal. |653-654, 657-659|

PETITION IN EQUITY filed in the Probate Court for the county of Middlesex on January 8, 1969.

The case was reported by *Martin*, J.

*Harry F. Rice* stated the case.

*Keith L. Hughes* for Marie Louise Godfrey & another.

*Robert F. Sylvia* (*Thomas W. Crosby* with him) for Alumnae Association of the School of Nursing of the Presbyterian Hospital in the City of New York, Inc.

CUTTER, J.    This petition in equity, brought in the Probate Court, seeks instructions concerning the trust under the will of Charles H. Joy (the testator). Upon the pleadings and a statement of agreed facts, the case was reported without decision for the determination of this court. G. L. c. 215, § 13.

Charles H. Joy died and his will was allowed in 1892. He was survived by his widow and by five children, Charles, John, Mrs. Edith Field, Mrs. Ellen Gray, and Benjamin. Benjamin Joy, the last survivor of the testator's children, died without leaving issue on September 10, 1968. Ellen Gray died on January 27, 1965. She was survived by her two daughters, Mrs. Marie Louise Godfrey and Mrs. Edith Gray Leonard, each of whom is still living and over the age of twenty-one. Charles Joy, John Joy, and Edith Field died without leaving issue in 1936, 1896, and 1954, respectively. The testator's widow died in 1939.

By art. Seventh of the testator's will, the testator left two-thirds of the residue to trustees upon trust (emphasis

supplied) to pay the net income "to my sons & to my daughters during their natural lives, *the whole of said net income to be divided among my children equally, the children of deceased children to take by representation their parents share.* With regard to *the final distribution of said trust fund,* it is my wish that the child or children of any child of mine upon the death of such child of mine, shall receive by representation their parents share of the net income of said trust property until they reach the age of twenty one years & as they severally attain the age of twenty one years, I direct my said Trustees to pay over and convey absolutely & free from any trust to them the same fraction of the principal of said trust property, as they severally received of the net income before attaining that age." [1] Article Ninth is quoted in part in the margin (fn. 1). Its most important provisions are discussed later in this opinion.

In 1896, after the death, intestate and without leaving issue, of John Joy (the first child of the testator to die), the then trustees under the testator's will filed a petition for instructions in the Middlesex Probate Court concerning the appropriate disposition of the one-fifth interest in the trust property of which John theretofore had been receiving

---

[1] Then follow spendthrift provisions, and art. Eighth which deals with the possibility that the testator's wife might die before him or before she came into possession of a part of the residue left to her. These provisions need not be quoted. Article Ninth reads, in part: "If all my said children [A] shall die without lawful issue or all their lawful issue shall die before reaching the age of twenty one years or before being put in possession of the principal of said Trust property then & in that case I give ∴ . . . all the principal of said Trust property [B] to any lawful descendants of mine then living & to the lawful wives & husbands of said descendants then living, each to take by representation according to the stocks, if however there shall be no such descendants or wives or husbands then & in that case, I give bequeath & devise all the principal of said Trust Property to a board of Trustees, to be appointed by my said Trustees, & to be duly incorporated under the Laws of the Commonwealth . . . to be held by them for the following [hospital] trusts & purposes . . . ." Then follows a statement of a charitable disposition which need not be quoted. There is a possible internal inconsistency or repetition in art. Ninth between (1) the language immediately following point [A], inserted for convenience of reference in the article as quoted above, and (2) the gift (following point [B], similarly inserted) to "any lawful descendants." As the situations mentioned in art. Ninth did not occur, we need not consider whether any such possible inconsistency or repetition would be cured by reading "issue" (the second time the word is used in the language following [A]) as meaning "children." See *Silsbee* v. *Silsbee,* 211 Mass. 105, 108–110.

the income.   The petition recited those facts, stated above,
which had then occurred.   An agreement (consistent with
the decree later entered) was obtained, signed by (a) all
persons then of full age interested in the trust, and (b) all
persons who would take by intestacy from the testator
(viz. Marie Louise Joy, the testator's widow, Charles R.
Joy, Edith Joy [later Field], and through the appointment
of a guardian ad litem, Ellen Joy [later Gray], Benjamin
Joy, and all persons then not in being or unascertained who
might take an interest in the trust).   The Attorney General
filed a waiver.   A decree thereupon was entered in the
Probate Court on February 2, 1897, that the trustees "con-
tinue to hold the whole of the [trust] fund . . . as they have
done heretofore, and to . . . divide the whole income
thereof, so long as the state of facts now existing continues,
to and among the remaining children of the" testator.   The
decree stated that the probate judge had "examined . . .
[the] Will, and especially the . . . seventh clause thereof,"
and that he was "of opinion that it is not possible to regard
any part of the fund held by the . . . trustees under the
Will . . . as having become by the death of John . . . Joy
without issue, either a part of the estate of said John . . .
Joy or property in respect to which . . . [the testator]
died intestate."   We regard this recital, so far as it went, as a
ruling of law pertinent to the issue then before the Probate
Court for decision.

The present controversy arises because of claims of
intestacy made by persons who would take by bequest or
intestacy from the testator's heirs at law if. we should
hold that there was an intestacy as to any part of the
trust corpus.   The testator's two surviving grandchildren
(who with their issue are his only living descendants) con-
tend that under art. Seventh they are entitled to the trust
corpus in equal shares.

1. It is our duty to determine the testator's true intent
and meaning from all the language (especially arts. Seventh
and Ninth) used by him, in the light of all pertinent cir-

cumstances. See *Goodwin* v. *New England Trust Co.* 321 Mass. 502, 504; *New England Merchants Natl. Bank* v. *Frost,* 357 Mass. 158, 163–165. See also *Fiduciary Trust Co.* v. *First Natl. Bank,* 344 Mass. 1, 12; *Wheeler* v. *Kannard,* 344 Mass. 466, 469–470; *Wright* v. *Benttinen,* 352 Mass. 495, 497. We are aided by the principle that an interpretation which would result in an intestacy is not to be adopted unless plainly required (*Anderson* v. *Harris,* 320 Mass. 101, 104–105) and we recognize the limitations upon the principle (see *Loring* v. *Clapp,* 337 Mass. 53, 60) that permits implying words to cure testamentary defects. See *New England Merchants Natl. Bank* v. *Mason,* 350 Mass. 265, 269. See also *National Shawmut Bank* v. *Zink,* 347 Mass. 194, 195–196; *Boston Safe Deposit & Trust Co.* v. *Schmitt,* 349 Mass. 669, 672.

We look first (as in *Old Colony Trust Co.* v. *Stephens,* 346 Mass. 94, 97) at the testator's general plan. By art. Seventh, he at the outset directed his trustees to pay the net trust income "to my sons & to my daughters, during their . . . lives, the *whole* of said net income to be divided among my children equally, the children of deceased children to take by representation their parents share" (emphasis supplied). Here "share," we think, refers only to income and the direction is that income alone is to be distributed, at least while there are children of the testator still alive. Thus, the trust corpus will be kept together (to produce the "whole" net income) and remain in the hands of the trustees in any event until the death of the last survivor of the testator's children.

On this interpretation, the "whole" net income to be distributed will go only (a) to those children of the testator remaining alive to take income when it is distributed, and (b) to then living children (and presumably more remote issue by representation) of a deceased child of the testator. This, of course, would leave no income available for the estate of any child of the testator who died without leaving surviving issue. Accordingly, we hold that such deceased

children of the testator with no surviving issue retained no share in income, and that the view on this issue taken by the Probate Court in 1897 was correct.

The next sentence of art. Seventh (although the testator's intention could and should have been more fully expressed) purports to cover the "final distribution of . . . [the] trust fund." Reference to the first sentence of art. Seventh suggests that this "final distribution" could take place at the death of the last survivor of the testator's children which would be the end of the operative period of the initial income gift (expressed as to continue during the testator's children's "natural lives"). In view, however, of the gift of income (in the second sentence of art. Seventh) to grandchildren of the testator until they severally attained the age of twenty-one, it may be that the scrivener thought of the income gift as continuing (after the death of the testator's last surviving child) until all the testator's then living grandchildren should reach or have reached the age of twenty-one (at least as to grandchildren while under that age).

As to this choice we now need not speculate. The events which have occurred make it unnecessary to decide at which of these two times the "final distribution" mentioned in the second sentence was to take place, for (as it has turned out) only one of the testator's children died leaving issue and each of the oldest generation of those issue (two grandchildren of the testator) is now over twenty-one. In the circumstances, the distribution was to take place in 1968 at the death of the last survivor of the testator's children (Benjamin Joy) if the two grandchildren were then over twenty-one, and at least when the younger grandchild reached that age, if either in 1968 was under that age.[2]

From the general structure of the will, we observe that art. Seventh makes no provision for any person who is not a child or grandchild (or more remote issue) of the testator.

---

[2] The record seems not to disclose the ages of the testator's two granddaughters in 1968.

Article Seventh makes gifts of income only to the testator's descendants. The gifts of principal made in art. Seventh also are solely to the testator's descendants. The article contains no provision which suggests any payment of principal until after the death of the last survivor of the testator's children or until the testator's grandchildren then living severally reach or have reached the age of twenty-one years.

The opening language of art. Ninth suggests that the scrivener obviously thought that (by art. Seventh) the corpus would be disposed of completely (or substantially) among the testator's descendants. That language (already quoted, fn. 1) reads in part (emphasis supplied), "If *all* my said children shall die without lawful issue or *all* their lawful issue shall die before reaching . . . twenty one . . . or before being put in possession of the [trust] principal . . . then & in that case I give . . . *all* the principal . . . to any lawful descendants of mine then living & to the lawful wives & husbands of said descendants then living . . . by representation" per stirpes, with a gift over to charity in default of such then living descendants or their husbands and wives. This language seems to us in effect to adopt the premise (a) that art. Seventh makes prior gifts of principal to the testator's children's lawful issue, living at the death of the last surviving child, who attain or have attained the age of twenty-one years and (b) that the stocks (see fn. 1) of the testator's children, who die "without [leaving] lawful issue" them surviving (or whose issue all die during minority), have been given no continuing interest in the trust corpus. The provisions (although perhaps not wholly internally consistent, see fn. 1, last sentence) at least negate any intention that there shall be an intestacy while the testator has living descendants.

The language of art. Seventh must be read with the general scheme of the trust in mind. In our opinion, its somewhat meager language (read with art. Ninth) requires the following result, in the circumstances, viz. at least grandchildren of the testator over twenty-one at the death of the testator's last surviving child or thereafter attaining that

age (by necessary implication from the language of art. Seventh) are entitled to take by representation the share of trust principal upon which the child of the testator from whom they are descended would have received the income if alive just prior to final distribution.

Although, in construing this document, "undue weight cannot be given to cases involving other wills different in content" (see *Old Colony Trust Co.* v. *Tufts*, 341 Mass. 280, 283), our result is supported by the most closely analogous decisions of this court. See *Sanger* v. *Bourke*, 209 Mass. 481, 484–488; *Fitts* v. *Powell*, 307 Mass. 449, 453–456; *Old Colony Trust Co.* v. *Molleson*, 315 Mass. 584, 588–590. See also *New England Merchants Natl. Bank* v. *Mason*, 350 Mass. 265, 269. In each of these cases the testator's purpose or plan was ascertained from the will as a whole and, once determined, was effectuated. We recognize that no one of these decisions is a precise precedent and that the dispositions there considered are not wholly comparable to that now before us. We conclude that no share of, or interest in, the corpus of this residuary trust has failed, and that there is no basis for any intestacy. Compare *Old Colony Trust Co.* v. *Johnson*, 314 Mass. 703, 709–711.

2. In the view we have taken of the case, there is no occasion to determine whether the legal issues were, as matter of law, fully determined by the 1897 decree. See *Reynolds* v. *Remick*, 333 Mass. 1, 9–10; *Bloom* v. *Bloom*, 337 Mass. 480, 482. See also *Binney* v. *Attorney Gen.* 259 Mass. 539, 542–544; *Nantucket Exp. Lines, Inc.* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 350 Mass. 173, 175–176, cert. den. 384 U. S. 952. Our conclusion is consistent with that decree in any event.

3. A decree is to be entered in the Probate Court instructing the trustees to distribute the trust corpus in equal shares to Marie Louise Godfrey and Edith Gray Leonard, the children of Ellen Gray, a child of the testator. Costs and expenses (including counsel fees) are to be in the discretion of the Probate Court.

*So ordered.*