AUGUSTUS P. LORING & another,[1] trustees, *vs.* COLIN S.
MARSHALL & others.[2]

Suffolk.  May 8, 1985. — November 7, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Devise and Legacy,* Power of appointment, Intestacy. *Trust,* Distribution.
*Res Judicata. Attorney General. Charity.*

Where a will provided that after certain events a residuary trust fund should
be paid over to the wife and issue of a nephew of the testatrix as he
should have appointed by will, limiting any amount to be appointed to
the wife to the income of the fund during her life, and provided that the
trust fund should be paid over to certain charities if the nephew did not
"leave such appointees then living," and where the will of the nephew,
who died leaving a wife and son, appointed the income of the trust fund
to his wife for her life, but made no appointment as to the principal, it
was held that upon the death of the nephew's wife the trust principal
was to be distributed to the executors of the estate of the nephew's son.
[169-172] O'CONNOR, J., with whom HENNESSEY, C.J., joins, dissent-
ing.

The decision of this court in *Massachusetts Institute of Technology* v. *Loring,*
327 Mass. 553 (1951), respecting the interest of certain charities in a
testamentary trust was conclusive on this issue, under res judicata prin-
ciples, in a later proceeding brought by the trustees of the trust seeking
instructions as to the disposition of the remainder of the trust, even
though the Attorney General had not been a party to the earlier proceed-
ing. [172-173] O'CONNOR, J., with whom HENNESSEY, C.J., joins,
dissenting.

[1] Francis C. Welch.

[2] Richard P. Brouillard, as trustee with the defendant Colin S. Marshall
under the will of Cabot Jackson Morse, Jr.; Augustus P. Loring and Law-
rence Coolidge, as executors of the will of Anna Braden Morse; Augustus
P. Loring and Charles Jackson, Jr., as executors of the will of Charlotte
G. S. Morse; the President and Fellows of Harvard College; Massachusetts
Institute of Technology; Museum of Fine Arts; and the Attorney General
of the Commonwealth.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on December 20, 1984.

The case was reported by *Lynch, J.*

*Eric F. Menoyo* for the plaintiffs.

*Nicholas U. Sommerfeld* for Lawrence Coolidge & another, executors.

*Joseph R. Watkins* (*Randall L. Holton* with him) for Charles Jackson, Jr., & another, executors.

*Francis S. Moulton, Jr.,* for Colin S. Marshall & another.

*Alan M. Spiro* (*Marion R. Fremont-Smith* with him) for Museum of Fine Arts & others.

*Kevin A. Suffern,* Assistant Attorney General, for the Attorney General.

WILKINS, J. This complaint, here on a reservation and report by a single justice of this court, seeks instructions as to the disposition of the remainder of a trust created under the will of Marian Hovey.[3] In *Massachusetts Inst. of Technology* v. *Loring,* 327 Mass. 553 (1951), this court held that the President and Fellows of Harvard College, the Boston Museum of Fine Arts, and Massachusetts Institute of Technology (the charities) would not be entitled to the remainder of the trust on its termination. The court, however, did not decide, as we now must, what ultimate disposition should be made of the trust principal.

Marian Hovey died in 1898, survived by a brother, Henry S. Hovey, a sister, Fanny H. Morse, and two nephews, John Torrey Morse, Third, and Cabot Jackson Morse. By her will, Marian Hovey left the residue of her estate in trust, the income payable in equal shares to her brother and sister during their lives. Upon her brother's death in 1900, his share of the income passed to her sister, and, upon her sister's death in 1922, the income was paid in equal shares to her two nephews. John Torrey Morse, Third, died in 1928, unmarried and without issue. His share of the income then passed to his brother, Cabot

---

[3] Questions involving the wills of Marian Hovey and her nephew, Cabot Jackson Morse, have been before this court on four prior occasions. See *Welch* v. *Morse,* 323 Mass. 233 (1948); *Massachusetts Inst. of Technology* v. *Loring,* 327 Mass. 553 (1951); *Frye* v. *Loring,* 330 Mass. 389 (1953); *Loring* v. *Morse,* 332 Mass. 57 (1954).

Jackson Morse, who remained the sole income beneficiary until his death in 1946.

At that point, the death of the last surviving income beneficiary, Marian Hovey's will provided for the treatment of the trust assets in the following language:

"At the death of the last survivor of my said brother and sister and my two said nephews, or at my death, if none of them be then living, the trustees shall divide the trust fund in their hands into two equal parts, and shall transfer and pay over one of such parts to the use of the wife and issue of each of my said nephews as he may by will have appointed; provided, that if his wife was living at my death he shall appoint to her no larger interest in the property possessed by me than a right to the income during her life, and if she was living at the death of my father, he shall appoint to her no larger interest in the property over which I have a power of disposition under the will of my father than a right to the income during her life; and the same limitations shall apply to the appointment of income as aforesaid. If either of my said nephews shall leave no such appointees then living, the whole of the trust fund shall be paid to the appointees of his said brother as aforesaid. If neither of my said nephews leave such appointees then living the whole trust fund shall be paid over and transferred in in [*sic*] equal shares to the Boston Museum of Fine Arts, the Massachusetts Institute of Technology, and the President and Fellows of Harvard College for the benefit of the Medical School; provided, that if the said Medical School shall not then admit women to instruction on an equal footing with men, the said President and Fellows shall not receive any part of the trust property, but it shall be divided equally between the Boston Museum of Fine Arts and the Massachusetts Institute of Technology."[4]

The will thus gave Cabot Jackson Morse, the surviving nephew, a special power to appoint the trust principal to his

---

[4] The parties have stipulated that at the relevant time the Harvard Medical School admitted women to instruction on an equal footing with men.

"wife and issue" with the limitation that only income could be appointed to a widow who was living at Marian Hovey's death.[5] Cabot Jackson Morse was survived by his wife, Anna Braden Morse, who was living at Marian Hovey's death, and by his only child, Cabot Jackson Morse, Jr., a child of an earlier marriage, who died in 1948, two years after his father. Cabot Jackson Morse left a will which contained the following provisions: "*Second*: I give to my son, Cabot Jackson Morse, Jr., the sum of one dollar ($1.00), as he is otherwise amply provided for. "*Third*: The power of appointment which I have under the wills of my aunt, Marian Hovey, and my uncle, Henry S. Hovey, both late of Gloucester, Massachusetts, I exercise as follows: I appoint to my wife, Anna Braden Morse, the right to the income during her lifetime of all of the property to which my power of appointment applies under the will of Marian Hovey, and I appoint to my wife the right during her widowhood to the income to which I would be entitled under the will of Henry S. Hovey if I were living. "*Fourth*: All the rest, residue and remainder of my estate, wherever situated, real or personal, in trust or otherwise, I leave outright and in fee simple to my wife, Anna Braden Morse."

In *Welch* v. *Morse*, 323 Mass. 233 (1948), we held that the appointment of a life interest to Anna Braden Morse was valid, notwithstanding Cabot Jackson Morse's failure fully to exercise the power by appointing the trust principal. Consequently, the trust income following Cabot Jackson Morse's death was paid to Anna Braden Morse until her death in 1983, when the principal became distributable. The trustees thereupon brought this complaint for instructions.

The complaint alleges that the trustees "are uncertain as to who is entitled to the remainder of the Marian Hovey Trust now that the trust is distributable and specifically whether the trust principal should be paid in any one of the following man-

---

[5] We are concerned here only with "property possessed" by the testatrix at her death and not property over which she had "a power of disposition under the will of [her] father." That property was given outright to his widow under the residuary clause of the will of Cabot Jackson Morse. See *Frye* v. *Loring*, 330 Mass. at 396. See also *Loring* v. *Morse*, 332 Mass. at 64.

ners: (a) to the estate of Cabot Jackson Morse, Jr. as the only permissible appointee of the remainder of the trust living at the death of Cabot Jackson Morse; (b) in equal shares to the estates of Cabot Jackson Morse, Jr. and Anna Braden Morse as the only permissible appointees living at the death of Cabot Jackson Morse; (c) to the estate of Anna Braden Morse as the only actual appointee living at the death of Cabot Jackson Morse; (d) to the intestate takers of Marian Hovey's estate on the basis that Marian Hovey failed to make a complete disposition of her property by her will; (e) to Massachusetts Institute of Technology, Museum of Fine Arts and the President and Fellows of Harvard College in equal shares as remaindermen of the trust; or (f) some other disposition." Before us each named potential taker claims to be entitled to trust principal.

In our 1951 opinion, *Massachusetts Inst. of Technology* v. *Loring,* 327 Mass. at 555-556, we explained why in the circumstances the charities had no interest in the trust: "The rights of the petitioning charities as remaindermen depend upon the proposition that Cabot J. Morse, Senior, did not leave an 'appointee' although he appointed his wife Anna Braden Morse to receive the income during her life. The time when, if at all, the 'whole trust fund' was to be paid over and transferred to the petitioning charities is the time of the death of Cabot J. Morse, Senior. At that time the whole trust fund could not be paid over and transferred to the petitioning charities, because Anna Braden Morse still retained the income for her life. We think that the phrase no 'such appointees then living' is not the equivalent of an express gift in default of appointment, a phrase used by the testatrix in the preceding paragraph." In *Frye* v. *Loring,* 330 Mass. 389, 393 (1953), the court reiterated that the charities had no interest in the trust fund.

It is apparent that Marian Hovey knew how to refer to a disposition in default of appointment from her use of the terms elsewhere in her will. She did not use those words in describing the potential gift to the charities. A fair reading of the will's crucial language may rightly be that the charities were not to take the principal unless no class member who could receive principal was then living (i.e., if no possible appointee of prin-

cipal was living at the death of the surviving donee). Regardless of how the words "no such appointees then living" are construed, the express circumstances under which the charities were to take did not occur. The question is what disposition should be made of the principal in the absence of any explicit direction in the will.

Although in its 1951 opinion this court disavowed making a determination of the "ultimate destination of the trust fund," the opinion cited the Restatement of Property § 367 (2) (1940), and 1 A. Scott, Trusts § 27.1 (1st ed. 1939)[6] to the effect that, when a special power of appointment is not exercised and absent specific language indicating an express gift in default of appointment, the property not appointed goes in equal shares to the members of the class to whom the property could have been appointed. For more recent authority, see 5 American Law of Property § 23.63, at 645 (A.J. Casner ed. 1952 & Supp. 1962) ("The fact that the donee has failed to apportion the property within the class should not defeat the donor's intent to benefit the class"); Restatement (Second) of Property § 24.2 (Tent. Draft No. 7, 1984).[7]

---

[6] "In Restatement: Property, § 367 (2), it is said, with certain immaterial exceptions, that 'where there is a special power and no gift in default of appointment in specific language, property not effectively appointed passes to those living objects to whom the donee could have appointed at the time of expiration of the power, unless the donor has manifested an intent that the objects shall receive the property only so far as the donee elects to appoint it to them.' In Scott, Trusts, § 27.1, the author says, 'Where there is no express gift over in default of appointment the inference is that the donor intended the members of the class to take even though the donee should fail to exercise the power. The inference is that he did not intend that they should take only if the donee should choose to exercise the power. . . . The cases are numerous in which it has been held that the members of the class are entitled to the property in equal shares where the donee of a power to appoint among them fails to exercise the power.' See Farwell, Powers (3d ed. 1916) 528; Kales, Estates Future Interests (1920) § 616." 327 Mass. at 556.

[7] Section 24.4, concerning the disposition of unappointed property under a nongeneral power of appointment, states: "To the extent the donor of a non-general power has not specified in the instrument creating the power who is to take unappointed property, the unappointed property passes (1) In default of appointment to the objects of the power (including those who are

Applying this rule of law, we find no specific language in the will which indicates a gift in default of appointment in the event Cabot Jackson Morse should fail to appoint the principal. The charities argue that the will's reference to them suggests that in default of appointment Marian Hovey intended them to take. On the other hand, in *Welch* v. *Morse,* 323 Mass. at 238, we commented that Marian Hovey's "will discloses an intent to keep her property in the family." The interests Marian Hovey gave to her sister and brother were life interests, as were the interests given to her nephews. The share of any nephew who died unmarried and without issue, as did one, was added to the share of the other nephew. Each nephew was limited to exercising his power of appointment only in favor of his issue and his widow.[8] We think the apparent intent to keep the assets within the family is sufficiently strong to over-come any claim that Marian Hovey's will "expressly" or "in specific language" provides for a gift to the charities in default of appointment.[9]

If we were to depart from the view taken thirty-four years ago in *Massachusetts Inst. of Technology* v. *Loring,* 327 Mass. 553 (1951), and now were to conclude that under the terms of Marian Hovey's will the charities were to receive the trust

---

substituted objects under an antilapse statute) living at the time of the expiration of the power as though they had been specified in the instrument creating the power to take unappointed property, if — (a) the objects are a defined limited class and (b) the donor has not manifested an intent that the objects shall receive the appointive property only so far as the donee elects to appoint it to them; or (2) To the donor or the donor's estate, if subsection (1) is not applicable."

[8] The gift to any widow was to be a life interest if she were living at Marian Hovey's death.

[9] The nominal distribution made to his son in the donee's will provides no proper guide to the resolution of the issues in this case. We are concerned here with the intention of Marian Hovey, the donor of the special power of appointment. The intentions of the donee of the power of appointment are irrelevant in construing the donor's intent. Similarly, those who rely on language in *Frye* v. *Loring,* 330 Mass. 389 (1953), as instructive in resolving questions in this case miss the point that Cabot Jackson Morse's intention with regard to his exercise of the power of appointment is irrelevant in determining his aunt's intention concerning the consequences of his partial failure to exercise that power.

principal, we would face the problem that, under normal prin-
ciples of res judicata, our earlier decision against the charities
is binding on them. Any suggestion that our 1951 decision did
not bind the charities because the Attorney General was not a
party to that proceeding is not supported by authority. The
charities themselves brought the earlier action and chose not
to name the Attorney General as a party. That action preceded
the enactment of G. L. c. 12, § 8G, inserted by St. 1954,
c. 529, § 1, which made the Attorney General a necessary
party to the proceedings concerning the application of funds
to public charities. Moreover, our 1951 opinion did not concern
a compromise settlement between a charity and its adversaries,
a situation in which the Attorney General's involvement would
then have been required. See *Springfield Safe Deposit & Trust
Co.* v. *Stoop*, 326 Mass. 363 (1950). To conclude now that
the Attorney General's involvement was indispensable to a
valid determination in the 1951 action would cast a shadow
over hundreds of pre-1954 decisions concerning charitable in-
terests under wills and trusts. See *Eustace* v. *Dickey*, 240
Mass. 55, 86 (1921).[10]

The same arguments made by the charities and the Attorney
General in this case were considered and rejected in 1951.
Surely in a case such as this, at least in the absence of a statute
to the contrary, the public interest in protecting the charities'
rights was fully accommodated by the Justices of this court in
its prior decision. The Attorney General does not suggest in
his answer that, if the named charities could not take, other
charities should take in their stead by application of the doctrine
of cy-pres.

What we have said disposes of the claim that the trust prin-
cipal should pass to Marian Hovey's heirs as intestate property,
a result generally disfavored in the interpretation of testamentary

---

[10] The court said, in discussing its jurisdiction to decide a case to which
the Attorney General was not a party: "It is hardly to be thought that so
many cases arising over so long a period of time could have been decided
inadvertently. These adjudications without joining the Attorney General as
a party are almost conclusive of the jurisdiction of the court even though
the point has not been discussed."

dispositions. See *Fiduciary Trust Co.* v. *State St. Bank & Trust Co.,* 360 Mass. 652, 656 (1971); *New England Merchants Nat'l Bank* v. *Frost,* 357 Mass. 158, 163 (1970); *Loring* v. *Clapp,* 337 Mass. 53, 59 (1958). The claim of the executors of the estate of Anna Braden Morse that her estate should take as the class, or at least as a member of the class, must fail because Marian Hovey's will specifically limits such a widow's potential stake to a life interest.

A judgment shall be entered instructing the trustees under the will of Marian Hovey to distribute the trust principal to the executors of the estate of Cabot Jackson Morse, Jr. The allowance of counsel fees, costs, and expenses from the principal of the trust is to be in the discretion of the single justice.

                                                    *So ordered.*


O'CONNOR, J. (dissenting, with whom Hennessey, C.J. joins). As the Attorney General argues, the event specified in Marian Hovey's will as triggering the charities' right to the trust principal occurred — Marian Hovey's nephews died without leaving living appointees of the trust principal. Therefore, contrary to the court's holding, the trustees should not be instructed to pay the principal to the executors of Cabot Jackson Morse, Jr.'s, estate. Rather, they should be instructed that "the whole trust fund shall be paid over and transferred in equal shares to the Boston Museum of Fine Arts, the Massachusetts Institute of Technology, and the President and Fellows of Harvard College for the benefit of the Medical School."

Our decision in *Massachusetts Inst. of Technology* v. *Loring,* 327 Mass. 553 (1951), does not bar a holding in the present case that the charities are entitled to the trust principal. The court states that if the Justices "were to depart from the view taken thirty-four years ago in *Massachusetts Inst. of Technology* v. *Loring,* . . . and now were to conclude that under the terms of Marian Hovey's will the charities were to receive the trust principal, [the Justices] would face the problem that, under normal principles of res judicata, our earlier decision against

the charities is binding on them." *Supra* at 172-173. The court's construction of Marian Hovey's will as providing that the charities are not entitled to the trust principal because her surviving nephew appointed the trust income to his wife avoids the perceived res judicata problem. However, the court's task is to construe the will fairly, uninfluenced by any inclination to avoid problems implicating principles of res judicata. That fact forcefully suggests that normal principles of res judicata should not be applied in the circumstances of this case, and no one, including the charities, should be precluded from claiming that the charities are entitled to the trust principal under Marian Hovey's will.

It is well settled that "even where the technical requirements of *res judicata* have been established, a court may nonetheless refuse to apply the doctrine." *International Harvester Co.* v. *Occupational Safety & Health Review Comm'n,* 628 F.2d 982, 986 (7th Cir. 1980). The doctrine of res judicata is applied by the courts to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Aetna Casualty & Sur. Co.* v. *Niziolek,* 395 Mass. 737, 742 (1985), quoting *Allen* v. *McCurry,* 449 U.S. 90, 94 (1980). Since the court must now determine for the first time the proper disposition of the trust fund after considering numerous possibilities advanced by many contenders, neither judicial economy nor the prevention of cost and vexation is achieved by precluding the charities and the Attorney General from advancing their views as to the appropriate construction of Marian Hovey's will. Furthermore, since the court in 1951 did not settle the question as to what party or parties are entitled to the fund, no party reasonably could have relied on that decision as adjudicating that party's entitlement.

The doctrine of res judicata is an expression of public policy, and, as such, it must yield, on occasion, to public policy of greater weight. See *Boucher* v. *Dramstad,* 522 F. Supp. 604, 607 (D. Mont. 1981) ("[R]es judicata is a principle of public policy to be applied so as to render rather than deny justice. The rule is intended to serve the aims of fairness and efficient

judicial administration and need not be applied mechanically where those ends would not be served"); *In re Scientific Control Corp.,* 80 F.R.D. 237, 243 (S.D.N.Y. 1978) ("Underlying principles of public policy, fairness and equity must temper application of the doctrine of *res judicata* where rigidity, injustice or unfairness would ensue"). The Restatement of Judgments also acknowledges the flexible nature of the doctrine of res judicata. According to the Restatement, the rules of preclusion should not apply to extinguish a claim where "[i]t is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason, such as the apparent invalidity of a continuing restraint or condition having a vital relation to personal liberty or *the failure of the prior litigation to yield a coherent disposition of the controversy*" (emphasis added). Restatement (Second) of Judgments § 26(1)(f) (1982).

Even if normal principles of res judicata are to be applied so as to bar the charities' claims, they do not bar the Attorney General's claim that the charities are entitled to the remainder of the trust fund. The Attorney General, the representative of the public, was not a party in the *Massachusetts Inst. of Technology* v. *Loring* case. Even if the decision in that case be deemed binding on the charities, it does not follow that the Attorney General is also bound. Inexplicably, the court gives virtually no attention to whether the Attorney General represents interests in the present case that are entitled to be heard and were not heard in the earlier case. Consideration of that question is highly relevant to a determination of whether the Attorney General has a right to be heard now.

The interest of the public in the proper application of funds given to public charities has been recognized by statute for well over 100 years. The Act of 1847, c. 263, provided in pertinent part: "The district attorneys of this Commonwealth shall see that all funds, given or appropriated to public charities within their several districts, are duly applied to their respective objects; and they are hereby authorized and required to use all lawful process to prevent the misapplication thereof, and to apply all lawful remedies for the correction of abuses and

breaches of trust in the administration of the same." That statute
has continued in force without material change to the present
time. The present codification, G. L. c. 12, § 8 (1984 ed.),
provides: "The attorney general shall enforce the due applica-
tion of funds given or appropriated to public charities within
the commonwealth and prevent breaches of trust in the admin-
istration thereof."

Before the enactment of St. 1954, c. 529, § 1, which added
§ 8G to G. L. c. 12, no statute made the Attorney General a
necessary party to proceedings concerning the application of
funds to public charities. However, long before that statute
was enacted, this court recognized that the public has a signif-
icant interest in the proper application of funds belonging to
public charities and that protection of that interest is the exclu-
sive function of the Attorney General in whose absence no
determination of the rights of the public can be made.
*Springfield Safe Deposit & Trust Co.* v. *Stoop,* 326 Mass.
363, 366 (1950) ("[The Attorney General] represents the public
in a charitable trust, and no determination of the rights of the
public can be made in his absence. G. L. [Ter. Ed.] c. 12,
§ 8. *Burbank* v. *Burbank,* 152 Mass. 254, 256-257 [1890]").[1]
In *Burbank* v. *Burbank, supra,* we said that "the law has
provided a suitable officer to represent those entitled to the
beneficial interests in a public charity. It has not left it to
individuals to assume this duty, or even to the court to select a
person for its performance. . . . No proceedings in regard to a
public charity, no matter how general the assent of those bene-
ficially interested, would bind him if not made a party . . . ."

---

[1] The quoted statement was not limited to settlement situations, as implied
by the court. The charity and the other claimants competing for the trust
money in *Springfield Safe Deposit & Trust Co.* v. *Stoop* had been parties
to an earlier case reported at 304 Mass. 224 (1939). That case did not
involve a settlement. The Attorney General was not a party. The court in
*Springfield Safe Deposit & Trust Co.* v. *Stoop, supra* at 366, said, "When
the case reported in 304 Mass. 224 came before the court, the Attorney
General was not a party. He represents the public in a charitable trust, and
no determination of the rights of the public can be made in his absence.
G. L. (Ter. Ed.) c. 12, § 8. *Burbank* v. *Burbank,* 152 Mass. 254, 256-257
[1890]."

See *Lopez* v. *Medford Community Center, Inc.*, 384 Mass. 163, 167 (1981); *Budin* v. *Levy*, 343 Mass. 644, 647-648 (1962); *Ames* v. *Attorney Gen.*, 332 Mass. 246, 250-251 (1955); *Elias* v. *Steffo*, 310 Mass. 280, 284 (1941); *Dillaway* v. *Burton*, 256 Mass. 568, 573 (1926); *Parker* v. *May*, 5 Cush. 336, 338 (1850).

Making reference to *Eustace* v. *Dickey*, 240 Mass. 55, 86 (1921), the court expresses concern that "[t]o conclude now that the Attorney General's involvement was indispensable to a valid determination in the 1951 action would cast a shadow over hundreds of pre-1954 decisions concerning charitable interests under wills and trusts." *Supra* at 173 & n.10.[2] The court's concern is unnecessary. The court would do nothing new were it to conclude that, since the Attorney General was not a party to the 1951 action, the decision was not binding on him or on the public interest of which he is the exclusive representative. Surely, nothing suggests that our adherence to that principle for over 100 years has been mischievous, or that circumstances have recently changed so that departure from that long-standing principle is now required.

Principles of res judicata, then, do not bar the Attorney General from contending, as he does, that the charities are

---

[2] In *Eustace* v. *Dickey, supra,* the court answered the Attorney General's challenge to its jurisdiction to decide, in a case to which the Attorney General was not a party, the right of a charity's directors to remove a trustee. That case does not affect the present controversy. The question here is not whether the court was without jurisdiction to decide *Massachusetts Inst. of Technology* v. *Loring,* but is only whether the substantial rights of the public can be decided in the Attorney General's absence.

Furthermore, in *Eustace* v. *Dickey,* the court characterized the question before it as involving the public interest only "remotely and accidentally" and observed that its "decision will not directly pass upon interests of which the Attorney General in his official capacity is the representative." *Id.* at 86. The distinction between the public's "remote and accidental" interest in whether the directors of a charity have the right to remove a trustee, and the public's direct and substantial interest in the proper application of a charity's funds is critical. That distinction is clear on its face, and it is reflected in the many decisions of this court before and after the decision in *Eustace* v. *Dickey,* holding that no determination of the public interest in the application of funds to charities can be made in the absence of the Attorney General as a party.

entitled to the trust principal. Notwithstanding the court's state-
ment that "the public interest in protecting the charities' rights
was fully accommodated by the Justices of this court in its
prior decision," *supra* at 173,[3] the fact is that the Attorney
General, who alone represents the public interest, has not been
heard before on the substantive issue presented by this case.
The representatives of the charities in the 1951 litigation did
not represent the public. The fact that the charities sought the
result for which the Attorney General now argues is immaterial.
*Sturbridge* v. *Franklin,* 160 Mass. 149, 151 (1893). Therefore,
because the Attorney General was not a party to the *Massachu-
setts Inst. of Technology* v. *Loring* case, he is not barred by
the principles of res judicata from asserting as the exclusive
representative of the public interest in this matter that the
charities are entitled to the principal of the Marian Hovey trust.
Unless the Attorney General is heard now by a court uninhibited
by concerns about res judicata principles, the public will have
been denied a forum. The position advanced by the Attorney
General, therefore, should be given full consideration by the
court.

The Attorney General argues that the condition on which
the charities' right to the trust principal depends has occurred
and that, therefore, the plaintiff trustees should be instructed
to distribute the fund to them. The Attorney General is correct.
By Article Seventh of her will, Marian Hovey left the residue
of her estate in trust. Article Seventh provides that at the death
of the last survivor of the testatrix, her brother, sister, and two
nephews, "the trustees shall divide the trust fund . . . into two
equal parts, and shall transfer and pay over one of such parts
to the use of the wife and issue of each of my said nephews
as he may by will have appointed . . . . If either of my said
nephews shall leave no such appointees then living, the whole
of the trust fund shall be paid to the appointees of his said
brother as aforesaid. If neither of my said nephews leave such

---

[3] The result that the court reached in its prior decision, adverse to the
charities, gives little support to the assertion that in that case the Justices
accommodated the interest of the public.

appointees then living the whole trust fund shall be paid over and transferred in equal shares to [the charities] . . . ." The court holds that the sole condition on which the charities are to take is that neither nephew leave an appointee of any part of the trust fund, including the trust income. That interpretation of the will not only does violence to the language of the instrument, but it interferes with Marian Hovey's manifest testamentary plan. Therefore, it cannot be correct.

Whenever possible, a will ought to be construed as providing a rational plan for the disposition of the testator's property. See *Sears* v. *Childs,* 309 Mass. 337, 344 (1941); *Prescott* v. *St. Luke's Hosp.,* 280 Mass. 229, 233 (1932). "In order to effect such [a plan] we may within reasonable limits supply by implication a defect in its expression. . . . Grammatical construction may be altered, sentences and words transposed, and words supplied if necessary to give effect to the manifest intent" (citations omitted). *Balcom* v. *Balcom,* 333 Mass. 599, 601-602 (1956). As I will demonstrate, the relevant language in Marian Hovey's will is reasonably susceptible of only one construction consistent with a reasoned method of accomplishing her manifest over-all objective, and that construction should be adopted by this court.

Marian Hovey's will clearly expresses her intent to dispose of the entire residue of her estate, in trust, for the benefit of several classes in accordance with expressed priorities; first, for the benefit of her brother, sister, and nephews; second, for the benefit of her nephews' wives (income only) and her nephews' issue to the extent the nephews, in their discretion, might determine; and, third, for the benefit of the charities to the extent that the trust fund is not exhausted for the benefit of the nephews' wives and issue. The provision that if neither nephew leaves "such appointees then living" the whole fund is to go to the charities obviously was designed to give to the charities those trust funds not appointed to issue who were living at the expected time of distribution. To express literally that manifest intent, a language modification is required, but the modification is minor and fits well within the principles of *Balcom* v. *Balcom, supra* at 602. As modified by insertion of the word "remaining," the relevant provision reads: "If

neither of my said nephews leave such appointee then living the whole [remaining] trust fund shall be paid over" to the charities. The will, construed in any other manner even remotely justified by its language, fails to express a cohesive rational plan to dispose of Marian Hovey's property.

In *Massachusetts Inst. of Technology* v. *Loring, supra,* the charities brought a petition alleging that the trust was entitled to certain funds they claimed had been paid wrongfully to third parties. The court was not called on, as it is here, to weigh the relative merits of competing claims of entitlement to the trust principal. That fact may well explain the court's holding. In any event, in a brief opinion, the court concluded that the charities had no remainder interest in the trust fund and they therefore lacked standing to bring the petition. The court explained its conclusion in the following manner: "The rights of the petitioning charities as remaindermen depend upon the proposition that Cabot J. Morse, Senior, did not leave an 'appointee' although he appointed his wife Anna Braden Morse to receive the income during her life. The time when, if at all, the 'whole trust fund' was to be paid over and transferred to the petitioning charities is at the time of the death of Cabot J. Morse, Senior. At that time the whole trust fund could not be paid over and transferred to the petitioning charities, because Anna Braden Morse still retained the income for her life. We think that the phrase no 'such appointees then living' is not the equivalent of an express gift in default of appointment, a phrase used by the testatrix in the preceding paragraph." *Id.* at 555-556. The court today adopts this explanation in support of its conclusion that the charities are not entitled to the fund.

The explanation is seriously flawed. It makes no attempt to harmonize the relevant will provisions with an identified overall testamentary objective. See *Boston Safe Deposit & Trust Co.* v. *Children's Hosp.,* 370 Mass. 719, 726 (1976); *Tucci* v. *DeGregorio,* 358 Mass. 493, 495-496 (1970); *Lamb* v. *Jordan,* 233 Mass. 335, 340 (1919). Instead, it creates disharmony. To be sure, Marian Hovey's interest in benefiting the charities was secondary to her interest in benefiting those family members appointed by her nephews to receive benefits, but

clearly her interest in the charities was not so minimal that she intended to preclude them from receiving trust principal simply because a nephew appointed his wife to receive trust income. Marian Hovey's priority of interests fully accounts for a provision that the charities take only such part of the trust fund as remains after the nephews have exercised their powers of appointment, but no priority of interests — no rational plan — no over-all objective is served by a provision that is construed to mean that even though no one has been appointed to receive the trust principal the charities are not entitled to receive the remaining funds. The court offers no explanation now, and it offered none in *Massachusetts Inst. of Technology* v. *Loring, supra,* as to why, consistent with some rational testamentary plan, the rights of the charities to the trust principal should depend on there having been no appointment of trust income.

After explaining that the rights of the charities depend on Cabot Jackson Morse's not leaving "an 'appointee,'"[4] the court in *Massachusetts Inst. of Technology* v. *Loring,* 327 Mass. 553, 555-556 (1951), stated that "[t]he time when, if at all, the 'whole trust fund' was to be paid over and transferred to the petitioning charities is at the time of the death of Cabot J. Morse, Senior. At that time the whole trust fund could not be paid over and transferred to the petitioning charities, because Anna Braden Morse still retained the income for her life." Those statements add nothing of substance to the statement preceding them. Of course, if the charities are entitled to the trust principal only in the absence of an appointment of the income, it follows that the time for payment to them was when Cabot Jackson Morse (Cabot J. Morse, Sr.) died. But if, as I contend, the charities are entitled to the trust principal regardless of the appointment of Anna Braden Morse to receive the income, then the time when the fund is to be paid to the charities is now. There is no provision in the will that the charities' rights to the trust fund depend on the time the fund becomes distributable.

---

[4] The relevant provision uses the words "such appointees," referring to appointees of the whole trust fund. The words "an appointee," possibly suggesting an appointee of part of the fund, do not appear in the will.

The last reason that the court gave in *Massachusetts Inst. of Technology* v. *Loring* for its conclusion that the charities had no remainder interest in the trust fund was its thought "that the phrase no 'such appointees then living' is not the equivalent of an express gift in default of appointment, a phrase used by the testatrix in the preceding paragraph." *Id.* at 556. That statement, adopted by the court today, seems to suggest that even if there had been no appointment of trust income at all the court would not have recognized remainder interests in the charities because Marian Hovey failed to express a gift to the charities in default of appointment in the same words she used in the preceding paragraph. As the present court puts it, "[i]t is apparent that Marian Hovey knew how to refer to a disposition in default of appointment from her use of the terms elsewhere in her will. She did not use those words in describing the potential gift to the charities." *Supra* at 170. No authority is given to support the proposition that there is but one way to express a gift in default of appointment, and such a proposition is not valid. There is no required formula. Such a gift need only be clearly stated and not merely implied or left to inference. The provision that "[i]f neither of my said nephews leave such appointees then living the whole trust fund shall be paid over" to the charities, clearly expresses a gift to the charities in default of appointment of the whole trust fund to persons living at the expected time of distribution. The court should not be concerned that in the relevant paragraph Marian Hovey did not use the same gift in default of appointment language that she used in the preceding paragraph. Even if there were no explanation for the differences in expression, the language in the relevant paragraph clearly expresses a gift in default of appointment to living appointees. Furthermore, there is a simple explanation for the differences in language. The language in question was well chosen to express not only a gift in default of appointment, as provided in the earlier paragraph, but also to express the idea that, even if appointments were made, unless the appointees were living at the time for distribution the money would go to the charities.

Adopting the result and the reasoning (indeed, the very language) of *Massachusetts Inst. of Technology* v. *Loring,* the court, erroneously in my view, concludes that the charities are not entitled to the trust principal. The court then proceeds, again erroneously, in my view, to the conclusion that the executors of the estate of Cabot Jackson Morse, Jr., are entitled to the fund. The court bases its conclusion on the rule, cited in numerous treatises, that "when a special power of appointment is not exercised and absent specific language indicating an express gift in default of appointment, the property not appointed goes in equal shares to the members of the class to whom the property could have been appointed." *Supra* at 171. I do not quarrel with the rule, but I quarrel with the court's application of it. The rule includes the clause, "and absent specific language indicating an express gift in default of appointment." That is an important clause because the rule, like other rules of construction, is intended to aid in ascertaining the testatrix's intent, and should not be applied to defeat it. *First Safe Deposit Nat'l Bank* v. *Westgate,* 346 Mass. 444, 447-448 (1963). In the absence of such specific language, it is reasonable to infer that the testator intended that in default of appointment the property would go to the whole class of permissible appointees equally. Otherwise, distribution of the property would be controlled by the laws governing intestate succession, a result not likely to have been intended by one who makes a will. But here the critical language disclosing the testatrix's intent is present. There is no need for inference. Here, contrary to the court's holding, there is an express gift to the charities in default of appointment to living appointees, and it should be given effect. The "rule" does not say otherwise.

The doctrine of res judicata does not require that the court follow *Massachusetts Inst. of Technology* v. *Loring,* and, because the values in overruling that decision outweigh the values underlying stare decisis, see *Franklin* v. *Albert,* 381 Mass. 611, 617 (1980), I would overrule it,[5] and I would instruct the

---

[5] The court is guilty of overstatement when it says, at 170, that "[i]n *Frye* v. *Loring,* 330 Mass. 389, 393 (1953), the court reiterated that the

plaintiff trustees to distribute the remainder of the trust fund in equal shares to the Massachusetts Institute of Technology, the Boston Museum of Fine Arts, and the President and Fellows of Harvard College.

charities had no interest in the trust fund." In *Frye* v. *Loring,* 330 Mass. at 393, the court simply made the observation, unnecessary to its decision, that "[i]n *Massachusetts Institute of Technology* v. *Loring,* 327 Mass. 553, it was held that these corporations have no interest in the trust fund." It is unnecessary, therefore, to overrule *Frye* v. *Loring.*